PER CURIAM.
 

 Appellant entered pleas of no contest to three indictments accusing her of fraud in the sale of securities. Tex.Rev.Civ.Stat. Ann. art. 581-29 (Supp.1991). The district court assessed punishment in each cause at imprisonment for ten years and a $3000 fine, but imposition of sentence was suspended and appellant was placed on probation.
 

 Appellant was vice president and office manager of Gaelic Petroleum, Inc., a Corpus Christi company ostensibly engaged in the oil and gas business. During 1984 and 1985, Gaelic sold program agreements by which individual investors purchased interests in Gaelic’s drilling projects. Two of these projects were known as “Cantu number 8” and “the Moss lease.” In fact, most of the money raised by Gaelic through the sale of program agreements was not used to drill oil and gas wells, but was instead converted to personal use by appellant and James Conners, president of Gaelic, or invested in an unrelated business formed by appellant and Conners. All of the investors’ money was lost.
 

 The indictment in cause number 4248 alleged that appellant sold to Alfred O. Broome for $3717.19 an interest in the Cantu number 8 project without disclosing to him that money received from previous investors in this and another drilling program had been used for purposes other than those for which it had been invested, and that appellant had intentionally failed to disclose this information for the purpose of inducing Broome to purchase the security. The indictment in cause number 4249 was substantially identical, alleging the sale of an interest in the Cantu number 8 project to Albert W. Ratliff for $3717.19. In cause number 4250, the indictment alleged the sale of an interest in the Moss lease to Elizabeth J. Duncan for $3381.25. Appellant judicially confessed to these offenses.
 

 As a condition of probation in cause number 4248 (our cause number 3-89-257-CR), the district court ordered that appellant pay $65,179.08 in restitution. This order appears to have been based on evidence that as many as forty persons purchased program agreements involving the Cantu number 8 and Moss lease projects, investing a total of $130,358.17. In her two points of error, appellant contends that: (1) the district court was not authorized to order restitution to persons not named in the indictments; and (2) there is no factual basis for the amount of restitution ordered.
 

 Texas Code Cr.P. art. 42.12, § 11 provides:
 

 (a) ... Terms and conditions of probation may include, but shall not be limited to, the conditions that the probationer shall:
 

 [[Image here]]
 

 
 *239
 
 (8) Pay his fine, if one be assessed, and all court costs whether a fine be assessed or not, in one or several sums, and make restitution or reparation in any sum that the court shall determine;
 

 [[Image here]]
 

 (b) A court may not order a probationer to make any payments as a term or condition of probation, except for fines, court costs, restitution to the victim, and other terms or conditions related personally to the rehabilitation of the probationer or otherwise expressly authorized by law. The court shall consider the ability of the probationer to make payments in ordering the probationer to make payments under this article.
 
 [1]
 

 It is appellant’s contention in her first point of error that by limiting court-ordered restitution to “the victim,” § 11(b) prohibits the award of restitution to persons not named in the indictments.
 

 Whether to order restitution as a condition of probation is within the sound discretion of the trial court, but due process considerations require that there must be evidence in the record to show that the amount set by the court has a factual basis.
 
 Cartwright v. State,
 
 605 S.W.2d 287 (Tex.Cr.App.1980);
 
 Thompson v. State,
 
 557 S.W.2d 521, 525-26 (Tex.Cr.App.1977). Moreover, a court is without authority to order restitution for losses caused by an offense for which the trier of fact has determined the defendant was not criminally responsible.
 
 Gordon v. State,
 
 707 S.W.2d 626 (Tex.Cr.App.1986);
 
 Hefner v. State,
 
 735 S.W.2d 608 (Tex.App.1987, pet. ref’d). The question presented in this cause, whether restitution may be ordered paid to a person not named in the charging instrument, has been alluded to, but not squarely addressed, by the Court of Criminal Appeals.
 
 See Flores v. State,
 
 513 S.W.2d 66, 69-70 (Tex.Cr.App.1974);
 
 Bradley v. State,
 
 478 S.W.2d 527, 531 (Tex.Cr.App.1972) (concurring opinion).
 

 Both appellant and the State rely on the opinion in
 
 Romine v. State,
 
 722 S.W.2d 494 (Tex.App.1986), pet. ref’d, 747 S.W.2d 382 (Tex.Cr.App.1988).
 
 Romine
 
 was a prosecution for misapplication of fiduciary property. The indictment alleged that the defendant had misapplied money placed in individual retirement accounts by four named individuals. As a condition of probation, the defendant was ordered to pay restitution to these four persons and to other persons whose money had been misapplied by the defendant in the same manner. Rejecting the defendant’s contention that he could not be ordered to pay restitution to persons not named in the indictment, the court of appeals wrote:
 

 One of the possible conditions [of probation] is for the probationer to “make restitution or reparation in any sum that the court shall determine.” Nowhere in the statutory language does the legislature provide that restitution is to be made only to “victims” of crimes. The only limitation on restitution is the due process requirement that the sum ordered to be paid be “just.” In other words, there must be sufficient evidence in the record to support the order.
 
 Cartwright v. State,
 
 605 S.W.2d at 289.
 

 [[Image here]]
 

 [W]e hold that the trial court did not abuse its discretion in ordering restitution payments to these persons even though they were not named as complainants in the indictment. As previously pointed out, art. 42.12 does not restrict restitution payments for losses caused only by the offense for which he was convicted, as does the statute governing
 
 *240
 
 restitution orders for parolees.
 
 Compare Bruni v. State,
 
 669 S.W.2d 829, 836 (Tex.App. — Austin 1984). Each of the persons testified and provided a sufficient factual basis for the restitution order.
 

 722 S.W.2d at 503-04.
 

 Romine
 
 was decided before passage of 1987 Tex.Gen.Laws, ch. 939, § 4, which first added the provision limiting restitution to “the victim.”
 
 See
 
 footnote 1,
 
 supra.
 
 Indeed, the
 
 Romine
 
 opinion relies on the absence of such a restriction to uphold the restitution order. But while § 11(b) undermines the reasoning employed by the court in
 
 Romine,
 
 it does not necessarily follow that § 11(b) takes away from trial courts the authority to order restitution to victims not named in the charging instrument.
 
 [2]
 

 Our research discloses only three opinions discussing, directly or indirectly, the question whether a person not named in the indictment can be a "victim” to whom restitution may be ordered paid. Each of these opinions involved restitution ordered pursuant to a statute authorizing the parole board to include as a condition of parole “the making of restitution or reparation to the victim of the prisoner’s crime, the total amount of such restitution or reparation as may be established by the court and entered in the judgment....”
 
 [3]
 
 Two of these opinions support the conclusion that a “victim” may be a person not named in the charging instrument; one reaches the opposite conclusion.
 

 in
 
 Harrison v. State,
 
 713 S.W.2d 760 (Tex.App.1986, pet. ref'd), a prosecution for involuntary manslaughter, the trial court ordered that restitution be made to the insurance company that paid the hospital expenses of the deceased victim. The court of appeals approved the order:
 

 We reject appellant’s contention that the insurance company which was required to pay some $23,000 because of appellant’s unlawful act is not a “victim” of his crime. Among other definitions for the term “victim,”
 
 Webster's Third New International Dictionary, Unabridged,
 
 1967, defines a victim as “anyone who suffers either as a result of ruthless design or incidentally.” We believe the insurance company was a “victim” and it was within the discretion of the trial court to order restitution to it. We find no abuse of discretion.
 

 713 S.W.2d at 765.
 
 [4]
 

 In
 
 Garcia v. State,
 
 773 S.W.2d 694 (Tex.App.1989, no pet.), a prosecution for theft by check, the court held that the defendant could not be ordered to pay restitution to other persons to whom he had also given hot checks but who were not named in the indictment.
 

 [W]e agree with appellant that the trial court was without authority to award restitution to persons not alleged in the indictment.
 
 Bruni v. State,
 
 [citation];
 
 compare Romine v. State,
 
 [citation];
 
 Harrison v. State,
 
 [citation]. Section 8(g)(1) of article 42.18 specifically states that restitution shall be paid to the victims of the defendant’s crime. More
 
 *241
 
 over, in
 
 Gordon v. State,
 
 [citation], the Texas Court of Criminal Appeals disallowed a trial court order requiring a defendant to pay expenses as a condition of probation for a crime for which the defendant had not been found responsible. The
 
 Gordon
 
 Court explained the rationale behind the
 
 Bruni
 
 Court decision (that restitution could not be made to a person who was not a named victim of the offense) to be that when a defendant’s criminal culpability for a third party’s loss has not been adjudicated, it would be unfair to order the defendant to pay for those loses [sic].
 
 Gordon,
 
 707 S.W.2d at 629. We believe such reasoning to be both proper and applicable to this case.
 

 773 S.W.2d at 697.
 
 [5]
 

 The third opinion speaking to this issue is one by this Court,
 
 Bruni v. State,
 
 669 S.W.2d 829 (Tex.App.1984, no pet.).
 
 Bruni
 
 was a prosecution for theft. The evidence showed that the defendant had by deception induced his fiancee’s brother, the victim named in the indictment, to invest in a bogus business. In the judgment of conviction, the trial court ordered that restitution in a specified amount was due the fiancee, her brother, and the brother’s wife. This Court wrote:
 

 Appellant argues that since only John R. Ross was designated in the indictment as the owner of the funds appropriated, he can be the
 
 only
 
 victim of the offense and that the trial court erred in including his wife Betty Ross and Ann Neimann [the fiancee] as victims. The State, in oral argument, conceded that Ann Neimann should not be named as a victim. We agree. However, we do not agree with appellant that the court erred in naming Betty Ross as a victim. The record shows that the $40,000 appropriated by Bruni was jointly owned by John and Betty Ross as husband and wife. The $3,173 for unpaid salary due John was community property. Perforce, both were victims.
 

 669 S.W.2d at 836.
 

 Bruni
 
 is erroneously cited in
 
 Gordon, Romine, Harrison,
 
 and
 
 Garcia
 
 as holding that restitution may be ordered paid only to a victim named in the indictment. In fact, this Court
 
 rejected
 
 the contention that the victim named in the indictment could be the only “victim” for restitution purposes. The award of restitution to Betty Ross was upheld even though she was not named in the indictment. Although the basis for this Court’s belief that Anne Neimann was not a “victim” is unstated, we note that there does not appear to have been any evidence of loss suffered by her. Thus,
 
 Bruni
 
 does not support appellant’s argument that because trial courts are now limited to ordering restitution to “victims,” those courts may not condition probation on the payment of restitution to victims not named in the indictment.
 

 “Restitution” is the giving back to the rightful owner of something lost or taken away; a making good for loss or damage. Webster’s New World Dictionary (2d college ed.1980). “Reparation” is a making of amends for a wrong or injury.
 
 Id.
 
 Both terms necessarily contemplate the existence of a wronged or injured person to whom the restitution or reparation will be paid; in other words, a victim. In that sense, § 11(b) merely makes explicit that which is implicit in § 11(a)(8). This does not mean, however, that § 11(b) is meaningless. Before its passage, there was no statutory restriction on the type of payments a trial court could require as a term of probation. Under § 11(b), trial courts are limited to those payments expressly authorized by law. Section 11(b) constitutes a restriction on what had been unlimited trial court discretion regardless of the meaning given to the term “victim.”
 

 The purpose of art. 42.12 is to remove barriers to effective systems of pro-
 
 *242
 
 bations in the public interest. Tex.Code Cr.P.Ann. art. 42.12, § 1 (Supp.1991). We believe that it serves that purpose for trial courts to have broad discretion in fashioning conditions of probation within the limits otherwise established by law. We therefore hold that a trial court’s authority to order restitution payments as a condition of probation is not limited by art. 42.12, § 11(b) to victims named in the indictment or information; a trial court may condition probation on the payment of restitution to a victim not named in the charging instrument. However, due process requires that before restitution may be awarded to any person, there must be a factual basis in the record supporting the conclusion that the defendant was criminally responsible for the injury to that person; that the injury directly resulted from the offense for which the defendant was found guilty or from the same course of criminal conduct giving rise to the conviction; and that the amount of restitution ordered is reasonable and just.
 
 Cartwright v. State, supra; Thompson v. State, supra.
 

 Having concluded that the district court was legally authorized to order restitution to persons not named in the indictment, we now turn to appellant’s contention that the restitution order does not have an adequate factual basis. The district court ordered that appellant pay restitution in the amount of $65,179.08 following a punishment hearing at which the proper amount of restitution was the primary issue. The court did not state in the record the names of the victims to whom this restitution is owed, or specify the amount of restitution each victim is to receive.
 
 [6]
 

 Chilo Rivera, an examiner for the Securities Board, testified that he had examined the records of Gaelic Petroleum. Based on this examination, Rivera prepared a list of investors in the Cantu number 8 and Moss lease projects showing the amount each had invested. This list was introduced in evidence as State’s exhibit 12 without objection. The exhibit lists forty investors (counting investments by husbands and wives as one), including the three named in the indictments, and reflects a total of $130,358.17 invested. In answer to questions by the prosecutor, Rivera testified:
 

 Q All right. In your examination of the contracts produced by Mrs. Martin concerning the Cantu 8 well program, did you observe what officer or what person with the Gaelic Petroleum Corporation executed those contracts?
 

 A The contracts with the investors?
 

 Q Yes, sir.
 

 A Judy Martin.
 

 Q Okay. Did you find among the Cantu 8 contracts, if you can recall, any contract that was executed by Mr. Con-nor?
 

 A I can’t say that I, that I can recall.
 

 Q Likewise, with the Moss well program, did you examine the investor contracts on the Moss well program?
 

 A Yes, sir.
 

 Q Who was the party that executed the contracts?
 

 A If I recall correctly, it was Judy Martin.
 

 [[Image here]]
 

 Q ... In her examination on March 11 of 1988, did you inquire of Mrs. Martin who took investor phone calls or who talked to investors?
 

 A Yes, sir.
 

 Q And what was her response?
 

 A As to who took investor phone calls?
 

 Q Yes, sir.
 

 A. Her response was that she was the office manager. There were, and she was taking phone calls.
 

 Q ... On February 11 of 1988, in response to a subpoena, did Mrs. Martin produce among the records of Gaelic Petroleum Corporation, copies of correspondence that they had had with third parties?
 

 A Yes, sir.
 

 Q Did you examine that correspondence?
 

 
 *243
 
 A Yes, sir.
 

 Q Was the — Did the correspondence cover the year 1984?
 

 A Yes, sir, it did.
 

 Q Did it cover the entire calendar year of 1985, or some portion of it?
 

 A It covered ’84, and ’85.
 

 Q Who was responsible for, or whose signature appeared on that correspondence going from Gaelic to third parties?
 

 A Judy Elliott Martin.
 

 Q Did you ask her whether or not investors were told in her contact with them whether or not they were informed of the prior use of investor funds on the Cantu 8 or Moss well?
 

 A Yes, sir.
 

 Q What was her answer?
 

 A The response was that the investors were not aware that the funds had been expended.
 

 Q Did Mrs. Martin make any statements about correspondence sent to Moss and Cantu 8 investors about the delays in drilling?
 

 A Yes, sir, she did make statements about that.
 

 Q And what were her statements, if you recall them?
 

 A That they were sending investor correspondence which she signed basically telling them that because of rain or weather delays the work had not progressed as they had indicated it would and she was, she was the one signing the correspondence and mailing it to the investors.
 

 Q Did she indicate that she had awareness that that was not the real reason the wells were being drilled?
 

 A She indicated that, one, the funds had been expended, and secondly, she indicated that she knew that the letters were sent to string the investors along.
 

 [[Image here]]
 

 Q All right. Did Mrs. Martin indicate whether brochures were provided to any of the agents who sold investments in the Cantu 8 and the Moss program?
 

 A Yes, they were.
 

 Q Who provided those documents?
 

 A Judy Elliott Martin.
 

 Q Did you inquire of Mrs. Martin whether or not any information was provided to any of the investors in the Cantu 8 and the Moss well programs about the prior use of investor funds in those programs?
 

 A Yes, sir.
 

 Q And what was her, what was the result of your inquiry?
 

 A None was.
 

 Q No information was provided?
 

 A No.
 

 Maxwell Brady testified at the punishment hearing that he invested $11,625.00 in the Moss lease project as a result of a sales presentation by appellant. Although Brady was not asked whether he had been materially misled by appellant at the time his investment was made, he did testify that he had intended that his money be used to complete the drilling project described in the agreement. Other evidence demonstrates that the money invested in the Moss lease project was not used for that purpose.
 

 The evidence establishes that appellant was an active and knowing participant in a scheme whereby numerous investors, including Brady and those named in the indictments, were fraudulently induced to purchase Gaelic Petroleum’s spurious drilling programs. While each sale was a discrete offense, all sales were part of a single ongoing criminal scheme.
 
 [7]
 
 We find that there is a factual basis in the record for concluding that appellant was criminally responsible for the fraudulent sale of drilling programs to individuals not named in the indictments; that these fraudulent sales were made pursuant to the same course of criminal conduct giving rise to the offenses to which appellant confessed and for which she was convicted; and that the money invested pursuant to this fraud
 
 *244-248
 
 ulent scheme totalled $130,358.17. We therefore hold that the district court did not abuse its discretion by ordering appellant to pay $65,179.08 in restitution.
 

 We note again that the district court did not specify in the record the names of the persons owed restitution, and we are not asked to decide whether there is a factual basis for paying restitution to any particular person. We hold only that there is a factual basis for restitution in the amount ordered, which is the point of error before us.
 

 The judgments of conviction are affirmed.
 

 [1]
 

 . Trial courts have been authorized to require probationers to "make restitution or reparation in any sum that the court shall determine” since passage of the Adult Probation and Parole Law of 1947. 1947 Tex.Gen.Laws, ch. 452 [Tex.Code Cr.P. art. 781b, § 3(h) (1925) ]. What is now art. 42.12, § 11(b) was first enacted in 1987. 1987 Tex.Gen.Laws, ch. 939, § 4 [Tex.Code Cr.P. art. 42.12, § 6(e) ]. The statute was amended and renumbered effective September 1, 1989. 1989 Tex.Gen.Laws, ch. 785, § 4.17.
 
 See also
 
 Tex.Code Cr.P.Ann. art. 42.12, § 11(e) (Supp. 1991). Although the offenses for which appellant was found guilty were committed in 1985, the parties agree that the 1987 and 1989 amendments to art. 42.12 Eire applicable to these causes.
 
 See Ex parte Rutledge,
 
 741 S.W.2d 460 (Tex.Cr.App.1987).
 
 See also
 
 Tex.Gov’t Code Ann. § 311.031(b) (1988).
 

 [2]
 

 . Another case predating § 11(b) is
 
 Collins v. State,
 
 701 S.W.2d 275 (Tex.App.1985, no pet.).
 
 Collins
 
 was a prosecution for securing execution of a document by deception. The indictment alleged that in April 1983, the defendant related false information to the Department of Human Services resulting in the overpayment of benefits to her. The evidence showed that the defendant had received payments from the department to which she was not entitled beginning in December 1981, and the trial court ordered restitution of this money as a condition of probation. Using reasoning similar to that employed in
 
 Romine,
 
 the court of appeals upheld the trial court’s order.
 

 [3]
 

 .
 
 See
 
 Tex.Code Cr.P.Ann. art. 42.12, § 15(g) (1979). This provision was subsequently renumbered as Tex.Code Cr.P. art. 42.18, § 8(g). 1985 Tex.Gen.Laws, ch. 427, § 2. In its most recent revision of the parole statute, the legislature deleted the language in question.
 
 See
 
 Tex. Code Cr.P.Ann. art. 42.18, § 8(g) (Supp.1991).
 

 [4]
 

 .We do
 
 not, by
 
 citing
 
 Harrison,
 
 necessarily agree with the conclusion that the insurance company was a "victim” entitled to restitution. In that case, the only victim directly injured by the defendant’s criminal conduct was the person killed. The insurance company paid the deceased’s medical expenses because of its contractual obligation; its financial loss was only an indirect result of the defendant’s criminal conduct.
 

 [5]
 

 . As will be discussed,
 
 Garcia
 
 misconstrued this Court’s opinion in
 
 Bruni.
 
 Also, we do not understand the Court of Criminal Appeals’ opinion in
 
 Gordon
 
 as holding that it is improper to order restitution for unadjudicated third-party losses. The holding in
 
 Gordon
 
 was that restitution could not be ordered when the question of criminal responsibility had been adjudicated and the trier, of fact had found there was none.
 

 [6]
 

 . Appellant does not complain of this lack of specificity, and we are not called upon to decide whether this condition of probation is enforceable as written.
 

 [7]
 

 . Although the sale of Gaelic’s drilling programs occurred before the 1987 amendment of Tex. Pen.Code § 3.01, we note that the sales constituted a single "criminal episode" as that term is now defined. Tex.Pen.Code Ann. § 3.01 (Supp. 1991).