Dale Louis LaFLEUR, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 09–91–292 CR.

Court of Appeals of Texas, Beaumont.

Jan. 28, 1993.

Grover C. Halliburton, Orange, for appellant.

Steve Howard, County Atty., Donna O'Shea, Asst. County Atty., Orange, for State.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

This litigation pertains significantly to the expanding concept of victims' rights.

A jury found the appellant guilty of burglary of a habitation. The record was to the effect that the appellant had broken into the front door of his ex-wife's apartment. A confrontation took place between the appellant and the male friend of the ex-wife. The appellant bit off or partially bit off a portion of the nose of the male friend. The jury assessed punishment at confinement for a term of eight years and a fine of $1,000. Both the penitentiary time and the fine were probated.

The appellant concedes that his appeal from the judgment and sentence lies only as to the terms and conditions of probation imposed by the court. The trial court ordered as a term and condition of probation that certain restitution be made. An amount was $25,000.34. This amount was to be paid to the Northwestern National Life Insurance Company as reimbursement or recoupment for medical expenses paid by that said company on behalf of the victim. The victim had also incurred substantial, additional medical expenses that were not insured.

Initially, the district court set the sentencing hearing for August 2, 1991. The appellant objected on that date to a proposed term and condition of probation concerning restitution to the male companion who sustained an injury to his nose. The appellant maintains that the male companion was a non-victim. We hold that he was a victim. On several occasions the court reset the sentencing date. As we appreciate the record, there were several false starts on the final hearing to determine restitution payments. We have only the final part. We simply do not know what position the appellant took on prior dates. A subsequent date of sentencing was November 8, 1991.

One of the purposes of the hearing on November 8, 1991, was to determine the appropriate amount of restitution to be ordered as a term and as a condition of the

appellant's probation. At the hearing the State offered detailed testimony from the male companion in the case. The State took the position that this male companion was a victim. We agree. This person testified that as a result of the injuries inflicted upon him by appellant he was forced to seek necessary medical attention and medical treatment.

A major part, but not all, of the resulting medical bills were paid by Northwestern National Life Insurance Company, the insurance carrier through which he was covered by virtue of his employment situation.

The State's Exhibit One was a copy, being a complete, accurate copy, of all the checks that Northwestern National Life Insurance Company had issued and honored to pay and cover the medical expenses on behalf of the male companion in connection with his injury. No objection was made to the introduction of these documents. The total of those checks amounted to $25,-000.34 as of the date of the hearing.

However, the insurance benefits simply did not cover one hundred percent of the medical expenses that the male companion had incurred. The male companion had paid a number of his expenses personally. He produced cancelled checks. These personal checks represented medical expenses which the insurance did not pay. Six checks were in State's Exhibit No. 2. These six checks totalled $1,082.90 which had been paid directly by the male companion.

An expense of $500 had been paid by the injured victim, but that check had been misplaced apparently during the trial on the merits of the indicted offense. However, a bank statement was offered to show that cancelled check in the amount of $500. That check was made payable to Methodist Hospital in Houston. There was a bill that had not been paid. State's Exhibits No. 2, 3, 4, and 5 were offered into evidence. Exhibit 4 is the hospital bill, exhibit 5 is the doctor's bill. There was no objection to these introductions. Furthermore, the detailed and numerous checks and other evidences of payment made by Northwestern National Life Insurance Company have

been properly proved by and pursuant to TEX.R.CRIM.EVID. 902. The affidavit of Pamela A. Martens, the custodian of the records of Northwestern National Life Insurance Company is in compliance with Rule 902(10). Rule 803(6), (7) has been complied with.

There were some additional medical expenses which had not been paid by the insurance company nor by the male victim. These unpaid bills were contained in State's Exhibit No. 6. Again, these bills were for damages and injuries that the victim received as a result of the assault and personal injuries in this case. The services of a plastic surgeon had been employed. His bill amounted to $1,842.90. This bill came before the court into evidence without objection. The record showed that the total amount of the various exhibits and cancelled checks and bills totalled $27,926.14.

The male visitor was currently scheduled for additional further surgeries as a result of the injuries he received in the biting of his nose. There was an additional surgery to be performed in the future to finish doing the work on the injured nose. It was termed to be a finishing *structuring of the nose.* The surgeons were going to take a piece of the ear and put it into the nostril. This procedure was classified as additional plastic surgery. The male victim stated that he would furnish the future medical expenses directly to the probation department with an explanation of insurance benefits showing in detail what amounts the insurance company would pay in the future and what amounts the individual person would pay in the future. The male companion, the victim, was not cross-examined. The appellant offered no testimony.

The argument of the defense was basically that the medical expenses both past and future had to be shown to be reasonable and that the medical expenses were comparable to the usual and customary charges for the services or for like services at the time and place rendered and that the treatment was necessary. A further argument was that proof for future medical expenses must be based on reasonable medical probability. We perceive appellant

made no objection to the documentary evidence nor to the State's exhibits.

After the trial judge pointed out that the cases cited by the defense were civil cases, the judge made an order of court that as a term and condition of probation that the appellant shall be required to make payments at that time in the total amount of $27,926.14 of which $2,925.80 is payable directly to the victim and the sum of $25,000.34 is payable to Northwestern National Life Insurance Company. The court further ordered as a condition of probation that the appellant shall be responsible for present medical expenses and for additional and future medical expenses incurred by the victim in connection with this case.

At this point, there was an objection to the court's rulings and findings on the ground that the trial court exceeded its jurisdiction in light of TEX.CODE CRIM.PROC. ANN. art. 42.12, § 11 (Vernon Supp.1992) in that there was a 1987 and a 1989 amendment that limited the trial court to assessing restitution to the victim only. Ergo, appellant avers the insurance carrier was not the victim and it would be error to order repayment to the insurance carrier. There was a second objection made that the trial court had not followed the rules of evidence in allowing in the proof of medical and related expenses both as to the past and the future expenses. Without objection, by means of an affidavit the claims paid by Northwestern National Life Insurance Company were made admissible as business records.

### The Order of Restitution

The appellant, we perceive, concedes that the trial court can order restitution in any sum that the court shall determine. The only limitation, appellant argues, is that the sum ordered to be paid must be just. Appellant in his brief writes: "[i]n other words, there must be sufficient evidence in the record to support the order." *Cartwright v. State*, 605 S.W.2d 287 (Tex.Crim. App.1980); *Romine v. State*, 722 S.W.2d 494 (Tex.App.—Houston [14th Dist.] 1986), *pet. ref'd per curiam*, 747 S.W.2d 382 (Tex.

Crim.App.1988); *Jones v. State*, 713 S.W.2d 796 (Tex.App.—Tyler 1986, no pet.).

The trial bench is not limited strictly to the terms and conditions of probation enumerated in the statute; the trial court is to be guided by such terms and conditions. Appellant cites with approval *Romine, supra*. In *Romine*, Justice Robertson wrote:

Nowhere in the statutory language does the legislature provide that restitution is to be made only to "victims" of crimes. The only limitation on restitution is the due process requirement that the sum ordered to be paid be "just." In other words, there must be sufficient evidence in the record to support the order. *Cartwright v. State*, 605 S.W.2d at 289.

More recently, in *Gordon v. State*, 707 S.W.2d 626 (Tex.Crim.App.1986), the court of criminal appeals again addressed the issue of restitution payments ordered by a trial court as a condition of probation. In pointing out that the federal statute is more restrictive than our state statute, the court stated:

The Texas statute, by contrast, does not expressly limit the restitution a probationer may be ordered to pay to payment (sic) for losses caused only by the offense for which he was convicted. Article 42.12 § 6(a)(8) supra. Given this lack of express limitation, we are called upon in the instant case to interpret the scope of the statute.

*Id.* at 628. There, the court concluded the trial court incorrectly ordered restitution when the accused had been found *not criminally responsible* for the offense for which the restitution payments were to be made. Here, appellant was found guilty of misapplication of fiduciary funds. Where, as here, the trial court has heard evidence which was totally consistent with evidence from the other named complainants we find the trial court did not abuse the discretion in ordering restitution to Mr. Assolin. (emphasis theirs)

*Here* appellant had been ordered to make restitution payments for medical expenses caused only by the offense for which he

was convicted. Appellant has not and does not appeal from the judgment, establishing his criminal responsibility. Appellant here has been found criminally responsible.

Under this record the amount of the payments and the order to pay the same are just. Axiomatic is the concept that the appellant must show that they are not just. Appellant has not brought forward the statement of facts or the record of the trial in the undergirding criminal case. In the undergirding felony, a jury found appellant guilty of the burglary of a habitation. From appellant's brief we glean that a major, admitted thrust of the evidence was that LaFleur broke into the front door of his ex-wife's apartment and bit off a portion of the nose of her gentleman caller. *The jury assessed a term of eight years and a fine*, both of which were probated.

The trial judge heard the evidence. He acted in a just manner. The trial court has properly and judiciously determined the just amount. *See Cartwright v. State, supra*. The record amply and easily demonstrates that the amounts are just. No abuse of discretion by the trial court is shown. *Wooley v. State*, 629 S.W.2d 867 (Tex.App.—Austin 1982, pet. ref'd); *Jones v. State, supra*.

The Court of Criminal Appeals requirement is that the order and the amounts be just and have a factual basis. Judge Clinton in *Cartwright* wrote:

> Certainly whether to order restitution as a condition of probation is within the sound discretion of the trial court. But the dollar amount is a matter that the court "shall determine," Article 42.12, § 6 h, V.A.C.C.P. Due process considerations thus implicated require that there must be evidence in the record to show that the amount set by the court has a factual basis.

Furthermore, at oral submission the appellant conceded that the male companion had actually paid personally the amounts of money that he contended that he had paid personally prior to the date of the sentencing hearing. At oral submission appellant did not contest the victim's right to recover his payments. Appellant maintains that the $25,000.34 is not recoverable by the insurance company because that company was not the victim. In an able brief the appellant traces the enactment of the Tex. Code Crim.Proc. art. 781d, first enacted in 1965, to and through the subsequent amendments. It was pointed out that the *original article* provided that *the court could order as a term and condition of probation that the defendant make restitution or reparation in any sum that the court shall determine*. The appellant conceded in his brief that any such restitution then reposed within the sound discretion of the trial court.

Appellant argues that in 1987 the relevant section was amended to the effect that a trial court may not order a probationer to make payments as a term or a condition of probation except for fines, court costs, and restitution to the victim. We determine his contention is too narrow. Act of May 15, 1987, 70th Leg., R.S., ch. 939, § 3, 1987 Tex.Gen. Laws 3132, 3133 (amended 1989). The amendment of 1989 tracks the identical language adding only that a payment to a local crime stoppers program may be ordered. Act of February 28, 1989, 71st Leg., R.S., ch. 86, § 1, 1989 Tex.Gen. Laws 413, *amended by* Act of June 5, 1990, 71st Leg., 6th C.S., ch. 25, § 8, 1990 Tex.Gen. Laws 108, 110. Section 6 of Article 42.12 was renumbered as § 11 of Art. 42.12 by Acts of May 4, 1989, 71st Leg., R.S., ch. 785, § 4.17, 1989 Tex.Gen. Laws 3471, 3504.

### *Restitution*

■ *Restitution* is simply restoring to the original owner something lost or unlawfully taken away; a making good for loss, injury or damage.

■ In sum, construing the relevant, governing statutes harmoniously and giving pragmatic, practical effect to the legislative intent, we hold that the trial court may order terms and conditions of probation, that the probationer shall make restitution or reparation in any sum that the court shall determine and are just. Tex. Code Crim.Proc.Ann. art. 42.12 § 11(a)(8), (b).

Article 42.12 § 11(e) merely provides for payment to a local crime stoppers program; this subsection (e) does not vitiate § 11(a)(8), (b). Subsection (e) by its own terms does not limit or restrict § 11(a)(8), (b). Section 11, subsections (a)(8) and (b) are obviously express authorizations by statute. The appellant does not complain that the district judge failed to take into account his ability or inability to make the ordered payments.

### TEX.CODE CRIM.PROC.ANN. art. 56.01(3)

■ Appellant places major reliance on the definition of victim as set out in TEX. CODE CRIM.PROC.ANN. art. 56.01(3) (Vernon Supp.1992) and maintains that the definition of victim would not include restitution payments to an insurance company. Article 56.01(3) is simply not applicable or controlling of this offense.

*The appellant does not dispute the fact that the sum of $25,000.34 was paid by the life insurance company on behalf of its insured as a result of the injuries inflicted upon the male companion by the appellant.*

### The Trial Court's Powers

It should be noted and is significant and important that the granting of probation and its attendant terms and conditions (especially its attendant terms and conditions) are matters largely within the discretion of the trial court. TEX.CODE CRIM.PROC.ANN. art. 42.12 is entitled Adult Probation. Article 42.12 § 1 provides that:

It is the purpose of this Article to place wholly within the State courts of appropriate jurisdiction the responsibility for determining when the imposition of sentence in certain cases shall be suspended, *the conditions of probation, and the supervision of probationers,* in consonance with the powers assigned to the judicial branch of this government by the Constitution of Texas. It is the purpose of this Article to remove from existing statutes the limitations, other than questions of constitutionality, *that have acted as barriers to effective systems of pro-*

*bations in the public interest.* (emphasis added)

Article 42.12 is clearly a munificent grant of empowerment to Texas courts. It must be construed to accomplish its laudable purposes.

■ The doctrine and the principle of broad discretionary power was set out in *Cartwright v. State,* 605 S.W.2d 287 (Tex. Crim.App.1980). The *Cartwright* court held that whether to order restitution as a term and condition of probation is a matter solely within the discretion of the trial court. Thus, only an abuse of that discretion would be subject to a reversal by an appellate court. The appellant's argued position is that there is an abuse *but not because he is without responsibility for the personal injuries for which he was ordered to pay.* But the abuse arises from the fact that the injuries were paid for in part by an insurance carrier and the carrier is to be repaid. We disagree.

### Article 56.01 Revisited and the Remedial Legislation

Furthermore, the complete text of article 56.01 should be considered. Therein, victim also means a person who has suffered bodily injury. The reasonable purposes and legitimate ends of remedial legislation are to be considered. If we were to apply the contentions of the appellant as restricting the discretion of the trial judge in ordering just restitution, then such a construction would reward a convicted criminal or felon to the devastating detriment of a seriously and severely injured or disfigured person or victim. Also under such a limited and narrow construction if the victim died, *then those surviving family members who had to pay the funeral expenses and the medical bills of the last disability would be denied repayment.* The next of kin, the immediate family could not recover their expenses of the last illness, the funeral costs and burial costs of their loved ones. At the final hearing the bills and the checks came in without objection. We conclude the District Judge's orders are just and compellingly supported by the record.

Appellant complains that the checks and the bills did not comport in all respects to the Texas Rules of Civil Procedure. However, this is a criminal proceeding. *See Cartwright v. State,* 605 S.W.2d 287 (Tex. Crim.App.1980). *As we understood the oral submission the amount paid out directly by the male companion was conceded to be recoverable by him from the appellant.* Hence, up to this point upon this record we affirm the actions and orders of the district court including the terms and conditions of probation.

However, as to the future bills we conclude that the appellant is entitled to a hearing (if desired). That hearing would be consistent with this opinion.

The dissenting opinion is critical of the trial judge. The dissenter questions the trial judge's ordering payments to Northwestern National Life as being *some type of appellate exercise.* Under the record made before the trial judge, he acted justly and reasonably. The victim registered no objection to the payments being made to Northwestern National Life Insurance Company. The trial court was merely following the evidence and documents admitted before him. Appellant failed to impeach or contradict this evidence. Surprisingly the dissenter notes that the appellant posed this question: "Can the court order restitution paid to the *victim's* insurance carrier for money expended for medical treatment by said carrier?" Appellant, thus, has conceded that O'Neil is the victim. The appellant, both at trial level and here, *has conceded that the carrier had expended the indicated sums of money for medical treatment of the victim.* In admirable candor, the dissent states: "Although Mr. O'Neil was not a victim named in the indictment, this question is academic to us, since appellant does not question the condition of restitution payments to Mr. O'Neil."

The obvious posture of the victim, both at trial and on appeal, is that the money that was paid out by Northwestern National Life Insurance is properly payable back to that company.

The victim testified that he had insurance through his employer and that the insurance carrier paid a greater part of his medical expenses. However, no insurance policy was admitted into evidence. Out of abundance of perhaps unnecessary precaution, the restitution payments can be made jointly to the carrier and the victim.

In light of the remedial statutes and the decisional precedents it is evident that the requirement of some factual basis for the repayments is based on the rationale that convicted criminals or felons have committed acts that are more culpable and blameworthy than the civil litigant found to be merely negligent. Appellant has not been deprived of his due process protection. The record before us does not demonstrate that the medical providers have charged for non-medical items and then included these charges in their bills. The dissenter is outside of the record in making this accusation.

■ We hold:
1. *The male* caller was a victim;
2. Northwestern National Life Insurance Company is entitled to recover its payments; Northwestern National Life Insurance Company stands in the shoes of the victim; Northwestern National Life Insurance Company is subrogated and substituted in the place of the victim with reference to the claims, demands or rights of the victim; Northwestern National Life Insurance Company succeeds to the rights of the victim in relation to the medical claims it paid;
3. Victim, through his employment, obtained medical insurance coverage— neither he nor Northwestern National Life Insurance Company should be penalized for this foresight; the victim's attitude of mature responsibility of obtaining insurance is to be encouraged;
4. Defendant cannot take advantage of the victim having proper insurance;

The judgment below is affirmed with modifications concerning future medical bills only as set out in this opinion.

AFFIRMED.

WALKER, Chief Justice, concurring.

I respectfully concur with the result reached by the majority. I feel, however, that Chapter 56 of the Code of Criminal Procedure [1] need not be resorted to as case law has explicitly spoken to the issue raised by appellant in his first point of error.

The decision to order restitution as a condition of probation lies within the sound discretion of the trial court. *Cartwright v. State*, 605 S.W.2d 287 (Tex.Crim.App.1980); Tex. CODE CRIM.PROC.ANN. art. 42.12, sec. 11(a)(8) (Vernon Supp.1992). Due process requires some factual basis to support a defendant's criminal responsibility for an injury. *Cartwright, supra* at 289; *Thompson v. State*, 557 S.W.2d 521, 525–526 (Tex. Crim.App.1977). In the instant case, appellant concedes in his brief that a variety of documents were admitted into evidence as proof by the State of the expenses incurred to repair Mr. O'Neil's nose. Appellant does not complain that he is not responsible for the injury sustained by Mr. O'Neil. Indeed, appellant's objection at trial was that "the Court exceeds its jurisdiction based on Rules of Criminal Procedure, 42.12, Section 11, ... as of the 1987 and 1989 amendments it limits the Court in assessing restitution to the victim only, and we would say that the insurance carrier is not the victim. . . ."

I find the case of *Martin v. State*, 806 S.W.2d 237 (Tex.App.—Austin 1991, pet. ref'd) completely on point and dispositive of the issue. In *Martin*, the defendant presented the Austin Court with the identical issue. The Austin Court, relying on two other cases,[2] fully examined the question raised by the 1987 and 1989 amendments to art. 42.12. The *Martin* court concluded by holding that a trial court's authority to order restitution payments as a condition of probation is not limited by art. 42.12,

sec. 11(b) to victims named in the indictment or information. *Id.* at 242. There is no mention in *Martin* of Chapter 56, nor do I feel the need to include any portion of Chapter 56 in a substantive analysis of appellant's first point of error. I would, therefore, overrule appellant's first point of error based on the precedential value of *Martin* and the discussion contained therein.

With regard to appellant's second point of error, the record reflects that on each tender by the State of State's Exhibits 1 through 6, appellant lodged no objection. Under TEX.R.APP.P. 52(a), appellant has failed to preserve any complaint with regard to State's Exhibits 1 through 6 for review by this Court.

Having made the above observations, I reiterate my concurrence with the majority's affirmance of the judgment and sentence of the trial court.

BURGESS, Justice, dissenting.

Despite Justice Brookshire's assertion that "[t]his litigation pertains significantly to the expanding concept of victims' rights" and despite his attempt to characterize this case as involving reparation and/or rehabilitation, it is a fairly simple case involving fairly simple issues.

## RESTITUTION TO AN INSURANCE CARRIER

The trial judge in condition (h) of the probation order required, among other things, "Pay restitution of $27,926.14." This condition was clarified by the closing paragraph of the court's Judgment and Sentence: "Restitution to date: $27,926.14 payable as follows: $2,925.80 payable to Clayton O'Neil, ... and $25,000.34 payable to Northwestern National Life,[1]...." The

---

1. Chapter 56 of the Texas Code of Criminal Procedure is entitled, "Rights Of Crime Victims." Contrary to the slant appellant places on it, this writer views the import of Chapter 56 as a recognition and expansion of rights and privileges the State of Texas affords to individuals who suffer physical or mental injuries as a result of "the criminal conduct of another."

2. *Garcia v. State*, 773 S.W.2d 694 (Tex.App.—Corpus Christi 1989, no pet.); and *Harrison v. State*, 713 S.W.2d 760 (Tex.App.—Houston [14th Dist.] 1986, pet. ref'd).

1. Why the trial judge took this route is unclear unless this was to be viewed as some type of appellate exercise. The judge could have simply ordered the entire amount paid to the injured

issue raised on appeal is the propriety of the trial court awarding restitution to the insurance carrier. That was the same issue brought before the court in a "Brief of Law Pertaining to Court's Order of Restitution" filed October 23, 1991. That brief, noting it was filed in response to the court's order of August 16, 1991, posed the question: "Can the Court order restitution paid to the victim's insurance carrier for money expended for medical treatment by said carrier." [2]

Three other courts of appeals have faced the issue. *Jones v. State*, 713 S.W.2d 796 (Tex.App.—Tyler 1986, no pet.) held that *Cartwright v. State*, 605 S.W.2d 287 (Tex. Crim.App.1980) and TEX.CODE CRIM.PROC. ANN. art. 42.12, § 6(a)(8) (Vernon Supp. 1986), the probationer "make restitution or reparation in any sum that the court shall determine", allowed the order of payment of restitution to an insurance company which paid a victim's medical bill, citing *Flores v. State*, 513 S.W.2d 66 (Tex.Crim. App.1974) as implicitly approving the order. *Flores* involved the question of whether a judge could impose restitution if he had not listed that as one of the options in the jury charge. The court affirmed the trial court. Since the complained of restitution involved an insurance company, the *Jones* court says this implicitly approves restitution to an insurance company. Its reasoning is flawed. The court of criminal appeals rejected *Flores'* non-named victim argument because of a partial statement of facts, thus *Jones* is of questionable authority.

*Harrison v. State*, 713 S.W.2d 760 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd) is somewhat on point. It is a condition of parole case which held that the insurance company was a victim. An important distinction between the instant case and both *Jones* and *Harrison* [3] is these cases were

decided before section 11(b) was added to TEX.CODE CRIM.PROC.ANN. art. 42.12.

*Martin v. State*, 806 S.W.2d 237 (Tex. App.—Austin 1991, pet. ref'd) did address this and held that article 42.12 section 11(a)(8) allows restitution in any sum the court directs (this is the old section 6(a)(8) language) and that the section 11(b) language does not limit it to only those victims named in the indictment. However, the Austin court, in a footnote, makes it plain it does not necessarily agree with the *Harrison* conclusion that an insurance company is a victim. Thus, contrary to the position of the concurrence, *Martin* is not "completely on point and dispositive of the issue."

In fact, the question of whether section 11(b) limits restitution to only victims named in the indictment is still open.[4] *Gordon v. State*, 707 S.W.2d 626 (Tex. Crim.App.1986) held a deputy sheriff could not be required to pay funeral expenses as restitution when the jury had found him guilty of only pulling the victim's hair, the third degree felony, (this was a civil rights violation case) and not guilty of the victim's murder, a first degree felony. 707 S.W.2d at 629, Judge Clinton mentions *Bradley v. State*, 478 S.W.2d 527, 531 (Tex.Crim.App. 1972) where Judge Roberts' concurring opinion argued that a defendant should not be required to pay restitution to someone not a victim of the offense. Judge Clinton also cites *Bruni v. State*, 669 S.W.2d 829 (Tex.App.—Austin 1984, no pet.). He says the rationale of both *Bradley* and *Bruni* is that when the defendant's criminal culpability for a third party's losses has not been adjudicated it would be unfair to order the defendant to pay for these losses. *Bruni* was a parole restitution case. The court ordered restitution of $43,173 to John and Betty Ross, husband and wife, and $4,000 to Anne Neimann. The state conceded

victim and let reimbursement of the insurance carrier be between the carrier and the insured.

2. Although Justice Brookshire states: "We simply do not know what position the appellant took on prior dates.", it is clear to me that (1) appellant's prior positions had been the same and (2) the trial judge recognized this.

3. There is the obvious distinction that *Harrison* is a condition of parole case while this case is a condition of probation case.

4. Although Mr. O'Neil was not a victim named in the indictment, this question is academic to us, since appellant does not question the condition of restitution payments to Mr. O'Neil.

Anne Neimann was not a victim. The appeals court agreed. They affirmed the award to the jointly named husband and wife since the record showed the amount appropriated by the defendant was jointly owned by the husband and wife in spite of the fact the husband was the only owner named in the indictment. *Garcia v. State,* 773 S.W.2d 694 (Tex.App.—Corpus Christi 1989, no pet.) is a parole restitution case. This case followed *Bruni* and *Gordon* and disallowed the payment of restitution to victims of offenses for which the defendant had not been adjudicated guilty.

Whether or not section 11(b) limits payment of restitution only to named victims, it nonetheless limits payment to victims. The insurance carrier was not, in my view, a victim. It was either fulfilling its contractual obligation to the victim [5] or it was a volunteer.

Contrary to Justice Brookshire's second holding at the conclusion of his opinion, there is no evidence on which to base such a holding. Although Mr. O'Neil testified he had insurance through his employer and the insurance carrier paid a portion of his medical expenses, no insurance policy was admitted into evidence. Whether Northwestern National Life Insurance Company "stands in the shoes of the victim ... is subrogated and substituted in the place of the victim with reference to the claims, demands or rights of the victim, ... or succeeds to the rights of the victim in relation to the medical claims it paid" is nothing more than gross supposition without any basis in fact.

### THE EVIDENTIARY THRESHOLD FOR MEDICAL RESTITUTION

Justice Brookshire dismisses appellant's second point of error almost summarily. By noting this is a criminal procedure and citing *Cartwright,* I assume he is indicating the only requirement is there must be some factual basis for the amount set and the amount set must be "just". *Cartwright,* 605 S.W.2d at 289. Chief Justice Walker holds that since appellant had no objections to the cancelled checks no error was preserved.

Neither of these resolutions reach the question presented. Appellant's position, at trial and here, is there must be the same threshold evidentiary standard concerning medical restitution in a criminal case as there is in recovering medical expenses in a civil proceeding, i.e. the medical treatment must have been necessary and the expenses incurred must have been reasonable.

Due process is the underpinning for the requirements that restitution amounts have a factual basis and be reasonable and just. *Cartwright,* 605 S.W.2d at 289; *Martin,* 806 S.W.2d at 237. To require a factual basis, but have no evidentiary standard makes due process meaningless.[6] Civil law makes no distinction between negligent and intentional tortfeasors inasfar as liability for medical expenses. The rationale for the civil evidentiary standard is simple; the tortfeasor should be responsible for reasonable and necessary medical expenses proximately caused by his acts, but should not be responsible for other items.[7] We should adopt the same standard for setting medical expense restitution.

### SUMMARY

I would:

(1) hold under article 42.12 section 11(b) a defendant may only be required to make restitution to a victim;

(2) hold the insurance carrier is not a victim within the meaning of article 42.12 section 11(b), Texas Code of Criminal Procedure;

---

5. *See Martin,* 806 S.W.2d at 240, n. 4.

6. *Obviously there are some who would argue that convicted criminals should lose all due process protection and do not merit the same evidentiary protection of non-convicted civil litigants.*

7. It is within everyday experience that medical providers often provide non-medical items and include these expenses in their bills.

(3) hold in determining what amount of medical restitution is just, the evidentiary standard is reasonable and necessary medical expenses; and

(4) affirm the conviction, but reform the conditions of probation to delete the payment of restitution to the insurance carrier.

Since my colleagues reach other conclusions, I respectfully dissent.