**Judy Elliot MARTIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 618–91.**

Court of Criminal Appeals of Texas, En Banc.

March 30, 1994.

H. Jack Pytel, Jr., Larry Zinn, San Antonio, for appellant.

Sam Oatman, Dist. Atty., Llano, Rhonda K. Rogers, Sp. Asst. Dist. Atty., Robert Huttash, State's Atty., Austin, for the State.

◼

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MALONEY, Judge.

Appellant plead nolo contendere to a charge of securities fraud in violation of Section 29(C) of the Texas Securities Act. TEX. REV.CIV.STAT.ANN. art. 581–29 (Supp.1991) ("TSA"). The trial court sentenced her to ten years imprisonment, the execution of the sentence was suspended and appellant was placed on ten years probation, conditioned upon the payment of restitution. The Third Court of Appeals affirmed. *Martin v. State*, 806 S.W.2d 237 (Tex.App.—Austin 1991). We granted appellant's petition for discretionary review to settle a conflict among the courts of appeals as to whether restitution

may be awarded to victims of crimes for which the defendant has not been charged and convicted.[1] TEX.R.APP.P. 200(c)(1).

Heretofore, appellant and James Augustus Connor formed an oil company, Gaelic Petroleum. Gaelic Petroleum subsequently declared bankruptcy, and the State Securities Board began an investigation that culminated in an indictment against appellant.[2] The indictment alleged that appellant "did intentionally sell to ALFRED O. BROOME a security" in the amount of $3,717.19 and that appellant "did then and there commit fraud upon the said ALFRED O. BROOME by fraudulently and intentionally failing to disclose" certain matters concerning Gaelic Petroleum. As previously stated, the trial court placed appellant on ten years probation pursuant to TEX.CODE CRIM.PROC.ANN. art. 42.12 § 11. As a condition of probation, the court ordered restitution in the amount of $65,179.08. That amount represented half of the total amount allegedly lost by approximately forty investors in Gaelic Petroleum.[3]

1. *Compare Martin v. State*, 806 S.W.2d 237 (Tex. App.—Austin 1991) (where defendant convicted of securities fraud against three identified investors, trial court properly ordered restitution to other investors, based on evidence that defendant also committed fraud against them); *Romine v. State*, 722 S.W.2d 494, 504 (Tex.App.—Houston [14th Dist.] 1986, pet. ref'd) (where defendant convicted of misapplication of fiduciary property of four named individuals, trial court did not abuse discretion in ordering restitution to three other persons who were not named in the indictment, but who testified that they had also invested and lost money due to defendant's actions); *Harrison v. State*, 713 S.W.2d 760, 765 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd) (where defendant convicted of involuntary manslaughter trial court did not abuse discretion in ordering restitution to insurance company who paid deceased's hospital expenses; insurance company was a "victim" of the crime) *with Garcia v. State*, 773 S.W.2d 694, 697 (Tex.App.— Corpus Christi 1989, no pet.) ("trial court had no authority to order restitution to victims of offenses for which appellant had not been adjudicated guilty"); *Bruni v. State*, 669 S.W.2d 829, 836 (Tex.App.—Austin 1984, no pet.) (restitution properly ordered for joint owner of funds defendant was convicted of appropriating, but not for third person who was neither named in indictment nor an owner of funds appropriated).

2. Appellant was actually charged in three separate indictments and plead nolo contendere to each. Although the trial court probated all three sentences, he ordered restitution as a condition

of probation only in the instant cause; no restitution was ordered in the other causes.

Connor was also indicted and convicted of three separate securities fraud offenses. His sentences were identical to appellant's. *Connor v. State*, 809 S.W.2d 560 (Tex.App.—Austin 1991, pet. granted).

3. Although the persons to whom restitution should be paid are not identified in the order, the court of appeals noted that the order:

appears to have been based on evidence that as many as forty persons purchased program agreements involving [various leases], investing a total of $130,358.17.

*Martin*, 806 S.W.2d at 238. Neither party disputes this conclusion. We shall assume, as do the parties, that the trial court intended that the restitution amount be divided among the forty investors, not just Alfred Broome.

We note that the State asserts appellant waived her right to complain of the restitution order. However, a review of the record does not bear this out. The parties' inability to agree on the issue of restitution prevented them from reaching a plea bargain agreement. Prior to the punishment hearing appellant filed a Memorandum of Law in Aid of Sentencing in which she argued that restitution could only be ordered payable to the victim of the offense of conviction. At the hearing, appellant pointed the court to the matters argued in her Memorandum. Moreover, the State did not raise the issue of waiver before the Court of Appeals.

The court of appeals upheld the restitution order, concluding that "a trial court's authority to order restitution payments as a condition of probation is not limited by art. 42.12 § 11(b) to victims named in the indictment or information; a trial court may condition probation on the payment of restitution to a victim not named in the charging instrument." *Id.* at 242. Although the Court of Appeals' holding is couched in terms of whether or not the victim to whom restitution is to be paid is named in the indictment, the more precise issue, and in fact the issue upon which we granted review, is whether "the Court of Appeals erred in holding that restitution may be awarded to victims of crimes for which appellant had not been charged and convicted.[4]

## I.

■ Article 42.12, TEX.CODE CRIM.PROC. ANN., *Adult Probation,* § 11, *Basic Conditions of Probation,* provides that:

(a) Terms and conditions of probation may include, but shall not be limited to, the conditions that the probationer shall:

4. We note that this is, in most cases, two ways of saying the same thing. Named complainants will generally be the only victims of the crime adjudicated because in the majority of cases the offense is alleged in terms of an identified victim or complainant. However, we make this distinction because we recognize that the named complainant may not always be the only victim of the crime adjudicated. *See Bruni v. State,* 669 S.W.2d 829, 836 (Tex.App.—Austin 1984, no pet.) (restitution properly ordered to both named complainant and his wife where wife was joint owner of money defendant was convicted of appropriating).

5. Formerly, TEX.CODE CRIM.PROC.ANN. art. 42.12 § 6(a)(8). This section was renumbered in 1989 as section 11(a)(8). Effective September 1, 1993, the 73rd Legislature made two revisions to this section. Per Acts 1993, 73rd Leg., Ch. 806, § 2, p. 3209–3210, the following revisions were made to subsection (a)(8):

(8) Pay his fine, if one be assessed, and all court costs whether a fine be assessed or not, in one of several sums [, and make restitution or reparation in any sum that the court shall determine];

However, in Acts 1993, 73rd Leg., Ch. 900, § 4.01, p. 3725, the legislature did not recognize the above deletion in reprinting subsection (a)(8) for purposes of making the following changes thereto:

(8) Pay his fine, if one be assessed, and all court costs whether a fine be assessed or not, in one or several sums, *and make restitution or reparation in any sum that the court shall determine;*

TEX.CODE CRIM.PROC.ANN. art. 42.12 § 11(a)(8) (emphasis added).[5] We have construed this provision as empowering trial courts, within their sound discretion, to order restitution as a condition of probation so long as the amount set by the court had a factual basis in the record and was just. *Cartwright v. State,* 605 S.W.2d 287 (Tex.Crim.App. 1980). Effective September 1, 1987, Article 42.12 § 11 was amended to add the following provision:

(b) A court may not order a probationer to make any payment[s] [sic] as a term and condition of probation, except for fines, court costs, *restitution to the victim,* and other terms or conditions related personally to the rehabilitation of the probationer or otherwise expressly authorized by law.

TEX.CODE CRIM.PROC.ANN. art. 42.12 § 11(b) (emphasis added).[6]

(8) Pay his fine, if one be assessed, and all court costs whether a fine be assessed or not, in one or several sums, and make restitution or reparation in any sum that the judge [court] shall determine;

Accordingly, the language deleted by Chapter 806, § 2 appears in the in the passage of Chapter 900, § 4.01, effective on the same date. We express no opinion as to this apparent conflict.

We also note the passage, effective September 1, 1993, of TEX.CODE CRIM.PROC.ANN. art. 42.037, *Restitution,* in which it is provided that "[i]n addition to, or in the case of a misdemeanor, in lieu of any fine authorized by law, the court that sentences a defendant convicted of an offense may order the defendant to make restitution to any victim of the offense." *Id.* at 42.037(a); Acts 1993, 73rd Leg., Ch. 806, § 1. This new article addresses matters related to an order of restitution in cases of probation, parole or mandatory supervision, but does not repeal the restitution provisions contained in article 42.12.

6. This section first appeared in 1987 as section 6(e), but was renumbered in 1989 as section 11(b). The same language also appears in section 11(e), which was added in 1989:

A court may not order a probationer to make any payment[s] [sic] as a term and condition of probation, except for fines, court costs, restitution to the victim, payment to a local crime stoppers program under Subsection (h) of this

A plain reading of the two provisions together leads to the conclusion that subsection (b) serves as a limitation on the restitution that can be ordered under subsection (a). Subsection (a) sets forth a broad grant of authority, providing that a court may order a variety of terms and conditions of probation, including a condition that the defendant make "restitution or reparation in any sum that the court shall determine." Subsection (b), however, imposes limitations on the types of payments that can be ordered as a condition of probation, providing that *no* payment can be ordered *except* "restitution to the victim" and certain other identified payments. Further, in the context of the probation statute as a whole, we think it logical to conclude that subsection (b)'s limitation of restitution to "the victim" refers to the victim of the crime for which the defendant has been charged, convicted and sentenced.

Caselaw supports the conclusion that restitution may be awarded only to victims of the crime adjudicated. While we have never addressed that exact issue, we have held that restitution may not be ordered as a condition of probation for losses caused by an offense for which the defendant is not criminally responsible. *Gordon v. State,* 707 S.W.2d 626 (Tex.Crim.App.1986). In *Gordon* a burglary suspect died as a result of injuries sustained during a custodial interrogation. Gordon, one of the law enforcement officers involved, was charged under Penal Code section 39.021, *Violations of the Civil Rights of a Prisoner.* Although the charge permitted the jury to find Gordon responsible as a party for the death of the suspect, the jury instead found him guilty only of a lesser assault and assessed punishment at five years imprisonment and a two thousand dollar fine, both probated. *Id.* at 628. As a condition of probation the trial court ordered Gordon to pay restitution to the deceased's family of up to $4000 for funeral expenses. We recognized the principle that "when the defendant's criminal culpability for a third party's losses has not been adjudicated it would be unfair to order the defendant to pay those losses." *Id.* at 629.[7] Accordingly, we held that the trial court was without authority under article 42.12 to order restitution for the funeral expenses, as they were losses arising from an offense for which the defendant had been found not criminally responsible.

While appellant in the instant case was not acquitted of defrauding any of the Gaelic Petroleum investors (unlike the defendant in *Gordon* who was essentially acquitted of causing the suspect's death), neither was appellant's guilt in this case adjudicated with respect to any investor other than Broome. The State here charged appellant with fraudulently failing to disclose material information to Broome, thereby defining the scope of appellant's offense by identifying a distinct investor who was defrauded.[8] We conclude the court of appeals erred in holding that

section, and other terms and conditions expressly authorized by statute.
TEX.CODE CRIM.PROC.ANN. art. 42.12 § 11(e). Subsection (e) was deleted by the 73rd Legislature, Acts 1993, 73rd Leg., Ch. 900, § 4.01, p. 3726, but subsection (b) continues to provide for "restitution to the victim".

7. In *Gordon,* we quoted from a concurring opinion written by Judge Truman Roberts: "the restitution or reparation contemplated in Section 6 [predecessor to Section 11], does not include restitution to a party other than the victim of the crime for which the defendant was convicted. *Bradley v. State,* 478 S.W.2d 527, 531 (Tex.Crim. App.1972) (Roberts, J., concurring). We also cited a court of appeals opinion, *Bruni v. State,* 669 S.W.2d 829 (Tex.App.—Austin 1984). We then summarized these two opinions as follows:

The rationale of both these pronouncements seems to be that when the defendant's criminal culpability for a third party's losses has not been adjudicated it would be unfair to order the defendant to pay for those losses.
*Id.*

8. Presumably, the State could have brought indictments identifying each of the forty allegedly defrauded investors. As appellant points out, the use of multiple indictments is not the only option for the State, at least for purposes of determining the grade of the offense. *See, e.g.,* TEX. PENAL CODE ANN. § 31.09 (in theft involving "one scheme or continuing course of conduct" State can bring one indictment and aggregate amounts); TEX. PENAL CODE ANN. § 32.03 (in cases of fraud involving "one scheme or continuing course of conduct" state can consider such conduct as one offense and aggregate amounts in determining grade); Tex.Rev.Civ.Stat.Ann. art. 581–29–2 (when amounts obtained in violation of securities act under "one scheme or continuing course of conduct", conduct can be considered one offense and amounts aggregated in determining grade).

restitution could be awarded under article 42.12 § 11(b) to victims of crimes for which appellant had not been charged and convicted.[9]

## II.

■ The State argues that appellant's actions constituted a scheme to defraud, and as such, restitution may properly be ordered payable to all victims of that scheme.[10] In support of this proposition, the State cites federal court decisions holding permissible such recovery under the Victims Witness and Protection Act of 1982 ("VWPA"), 18 U.S.C. § 3579(a)(1) (1982 ed. and Supp. IV).[11]

The restitution provision of the VWPA authorizes federal courts, when sentencing defendants convicted of certain offenses, to order "a defendant convicted of an offense" to "make restitution to any victim of such offense." 18 U.S.C. § 3579(a)(1) (1982 ed., Supp. IV) (this provision has been recodified and now appears as 18 U.S.C. § 3663). In *Hughey v. United States*, the Supreme Court interpreted this language as authorizing restitution to be paid to victims of the offense for which a defendant was convicted. 495 U.S. 411, 415–20, 110 S.Ct. 1979, 1982–84, 109 L.Ed.2d 408 (1990) (VWPA ties term "victim" to "the offense", meaning offense of conviction). The Court further addressed the issue of whether a court had authority under the VWPA "to order a defendant who is charged with multiple offenses but who is convicted of only one offense to make restitution for losses related to the other alleged offenses." There, the defendant was charged with multiple counts of unauthorized use of credit cards, but pursuant to a plea agreement plead guilty to one count.[12] *Id.* at 414, 110 S.Ct. at 1981. The district court ordered him to pay restitution to MBank in the amount of $90,431, the total of MBank's losses resulting from the defendant's alleged theft and use of 21 credit cards issued by MBank. The district court's order was upheld on appeal. The Supreme Court reversed, holding that a restitution award under the VWPA is authorized only for "the loss caused by the specific conduct that is the basis of the offense of

9. The State argues that *Bruni v. State*, 669 S.W.2d 829 (Tex.App.—Austin 1984, no pet.), cited favorably by this Court in *Gordon*, supports its position that restitution may be awarded to all Gaelic Petroleum investors, not only to Alfred Broome. We disagree. In *Bruni*, the defendant was convicted of theft by deception and ordered by the trial court to pay restitution to named complainant John Ross, to John's wife Betty, and to Ann Neimann. The indictment alleged that the defendant had appropriated funds owned by John Ross. The Court of Appeals reformed the judgment to exclude Ann Neimann from the restitution order, but did not exclude Betty Ross. However, even though Betty Ross was not a named complainant, she was clearly a victim of the crime adjudicated. The defendant in *Bruni* was convicted of appropriating $43,173 from John Ross. The money appropriated belonged by law not only to John but also to his wife Betty Ross. *Id.* at 836 ($40,000 appropriated was jointly owned as husband and wife and $3,173 due to John Ross in salary was community property).

10. The court of appeals appears to have understood appellant's actions to constitute a scheme:
 While each sale was a discrete offense, all sales were part of a single ongoing criminal scheme. We find that there is a factual basis in the record for concluding that appellant was criminally responsible for the fraudulent sale of drilling programs to individuals not named in the indictments; that these fraudulent sales were made pursuant to the same course of criminal conduct giving rise to the offenses to which appellant confessed and for which she was convicted; and that the money invested pursuant to this fraudulent scheme totalled $130,358.17.
 *Martin*, 806 S.W.2d at 243–44. We note that the court of appeals' discussion of scheme pertained to the issue of whether the restitution order had a factual basis, an issue on which we declined to grant review. However, because the State contends in this appeal that the existence of a scheme is also pertinent to the issue of whether restitution may be ordered to persons not named in the indictment, we will address it in this context.

11. Restitution may be ordered under the VWPA when sentencing a defendant convicted of any offense listed under Title 18 of the U.S.C., *Crimes and Criminal Procedure*. Similarly, under TEX. CODE CRIM.PROC.ANN. art. 42.12 § 11, a court may order restitution as a condition of probation for any offense for which probation is appropriately ordered under the Code of Criminal Procedure.

12. The defendant agreed to plead guilty to one count and in exchange the government agreed to dismiss the remaining counts and forego prosecution " 'for any other offense arising in the Western District of Texas as part of the scheme alleged in the indictment.' " *Hughey*, 495 U.S. at 414, 110 S.Ct. at 1981.

conviction." *Id.* at 413, 110 S.Ct. at 1981. The Court concluded that the restitution order was beyond the scope of the VWPA:

> Petitioner pleaded guilty only to the charge that he fraudulently used the credit card of [a single cardholder]. Because the restitution order encompassed losses stemming from alleged fraudulent uses of cards issued to persons other than [that single cardholder], such portions of the order are invalid.

*Id.* at 422, 110 S.Ct. at 1985.

Federal courts have reached different conclusions under *Hughey* as to the permissible scope of a VWPA restitution award in the context of an offense involving a scheme.[13] Two circuits have interpreted *Hughey* in such a way as to permit restitution for all losses arising from the alleged scheme. *See United States v. Bennett,* 943 F.2d 738 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2970, 119 L.Ed.2d 590 (1992); *United States v. Stouffer,* 986 F.2d 916 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 314, 126 L.Ed.2d 261 (1993). These circuits hold that because the "offense of conviction" incorporates the scheme as a whole, restitution is properly ordered to cover all losses resulting from the scheme, not just those arising from the particular count with which the defendant has been convicted.

Five other circuits, however, have held that in the case of mail fraud the particular mailing is the "offense of conviction", not the entire scheme. *See, e.g., United States v. Cronin,* 990 F.2d 663, 666 (1st Cir.1993); *United States v. Seligsohn,* 981 F.2d 1418 (3rd Cir.1992); *United States v. Jewett,* 978 F.2d 248 (6th Cir.1992); *United States v. Stone,* 948 F.2d 700 (11th Cir.1991); *United States v. Sharp,* 941 F.2d 811 (9th Cir.1991). These circuits have focused more upon the

"offense of conviction" than the "specific conduct that is the basis" therefore, concluding that "the fact that an offense requires, as an essential element, the existence of a scheme to defraud 'is too fine a point on which to distinguish *Hughey.*'" *Jewett,* 978 F.2d at 251 (quoting *Sharp,* 941 F.2d at 815).

This Court is not bound by the interpretation of federal courts as to a federal statute. Because of the similarity of the issues involved and the State's contention here, we have reviewed the cited federal cases and note that we are more impressed with the reasoning of the federal circuits that have declined under the VWPA to allow the existence of a scheme to form the basis of a restitution order, but have focused instead upon the offense of conviction. This approach is consistent with our holding in Part I of this opinion that restitution may only be ordered payable to victims of the offense of conviction. In Part I of this opinion we held that by specifically providing that a defendant may not be ordered to make payments except restitution "to the victim", the legislature intended to limit the discretion of the trial court in ordering restitution payments and accordingly limited restitution to the victim of the offense for which the defendant was convicted. We see no evidence in the language of article 42.12 § 11 or otherwise to indicate that the legislature intended that restitution may be ordered payable to persons other than the victim of the offense of conviction, who also suffered as a result of a scheme of which the offense of conviction was a part.

The State argues that all the investors named in the restitution order[14] "are so closely linked and integral to the offense charged that it would be consistent with justice and fairness to permit them to receive restitution for their losses." We think it

---

**13.** We note that since *Hughey,* the VWPA has been amended to specifically allow broader restitution by providing that "for purposes of restitution, a victim of an offense that involves an element of scheme, a conspiracy, or a pattern of criminal activity means any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy or pattern." 18 U.S.C. § 3663(a)(2). Added by Pub.L. No. 101–647, § 2509, 104 Stat. 4789, 4863 (Crime Control Act of 1990). Pursuant to these amendments, a federal court is also authorized to award restitution to the extent agreed upon by

the parties in a plea agreement. *Id.* at § 3663(a)(3). The federal decisions discussed in this opinion interpret the VWPA as it existed prior to these amendments. We note that our legislature has not seen fit to similarly amend article 42.12.

**14.** We note that there is no "restitution order" in the record naming the investors to whom restitution should be paid, but we assume the existence of a separate order doing so. *See* fn. 3, *infra.*

more compelling that notions of "justice and fairness" dictate that a defendant be punished only for the crime of which he was convicted. *See Gordon*, 707 S.W.2d at 629 (would be denial of due process to order defendant to pay for costs associated with an offense for which he was found not criminally responsible). Even if we were to adopt the State's argument, appellant was not convicted of engaging in a "scheme to defraud", but rather was convicted of defrauding a single investor by failing to disclose certain material information.[15] Accordingly, the trial court erred by ordering over objection the payment of restitution to persons other than just the victim of the crime for which appellant was convicted—that is the offense of defrauding Mr. Broome of $3,717.19 by failing to disclose to him certain material information.[16]

For the foregoing reasons, the judgment of the Court of Appeals is reversed and this cause is remanded to the trial court to reform the order of restitution in a manner not inconsistent with this opinion.

BAIRD, Judge, dissenting.

I respectfully dissent because I believe Tex.Code Crim.Proc.Ann. art. 42.12, § 11(b)

15. The State chose not to charge appellant with employing a "scheme" under the TSA. Subsection (C) of the applicable TSA provision in effect at the time in question, set forth several alternative means by which an offense could be committed in connection with the sale of a security:

> (1) engage in any fraud or fraudulent practice, or (2) employ any device, scheme, or artifice to defraud, or (3) knowingly make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or (4) engage in any act, practice or course of business which operates or will operate as a fraud or deceit upon any person....

TEX.REV.CIV.STAT.ANN. art. 581–29 (Supp.1991). Alleging that appellant committed an offense by "fraudulently and intentionally failing to disclose" certain "material" information in order to induce the purchase of a security, the State appears to have charged appellant with an offense under subsection (3) of the above provision. Subsection (3) relates to the omission of material facts, while subsection (2) relates to participation in a scheme to defraud.

16. We do not intend that this opinion prevents an award of restitution to the extent agreed upon by the parties in a plea agreement, so long as the

authorizes a trial judge to order restitution payments to both the "victims" for whom the defendant's criminal liability has been adjudicated *and* the "victims" for whom there is a factual basis of the defendant's liability.

## I.

Tex.Code Crim.Proc.Ann. art. 42.12, § 11(a)(8), *Basic Conditions of Probation*, provides in pertinent part:

> a) ... Terms and conditions of probation may include, but shall not be limited to, the conditions that probationer shall:

> (8) Pay his fine, if one be assessed, and all court costs whether a fine be assessed or not, in one or several sums, *and make restitution or reparation in any sum the court shall determine;* [1]

Tex.Code Crim.Proc.Ann. art. 42.12, § 11(b) provides in pertinent part:

> A judge may not order a defendant to make any payments as a term or condition of community supervision, except for fines, court costs, *restitution to the victim*, and conditions related personally to the rehabilitation of the defendant or otherwise expressly authorized by law....

amounts agreed to and the persons to whom restitution is to be paid under the agreement have a factual basis in the record and are just. *See Cartwright, supra; see also* TEX.CODE CRIM. PROC.ANN. art. 1.14(a) ("defendant can waive any rights secured him by law").

We note that the Crime Victims Compensation Act, TEX.REV.CIV.STAT.ANN. art. 8309–1 (Vernon Supp.1993), is not applicable to this case. "Victims" under the Act must have suffered "personal injury or death as a result of criminally injurious conduct." *Id.* at 8309–1 sec. 3(8). The Act does not provide for court-ordered restitution, but rather establishes a fund in the State Treasury to which applicants can apply for monetary assistance. We also note that Chapter 56 of the Code of Criminal Procedure, *Rights of Crime Victims*, is not applicable to this case. "Victim" for purposes of Chapter 56 "means a person who is the victim of sexual assault, kidnapping, or aggravated robbery or who has suffered bodily injury or death as a result of the criminal conduct of another." TEX.CODE CRIM.PROC.ANN. art. 56.01(3). This Chapter does not provide for monetary relief to victims except for the recovery of costs for a medical examination conducted at the request of the State. *Id.* at art. 56.06.

1. All emphasis is supplied unless otherwise indicated.

As the majority correctly notes, § 11(b) limits the broad language of § 11(a)(8) authorizing the trial judge to order restitution payments. Majority Op. pg. 676–677. However, I do not believe either the legislative history or the relevant decisional authority forces the conclusion that the term victim is limited to the complainants of a crime for which a defendant's criminal liability has been *adjudicated.*

## II.

The legislative history of § 11(b) does not support the majority's conclusion that restitution payments are limited to only those victims of offenses for which a defendant's liability has been adjudicated. *See,* Majority Op. pg. 676–677. In fact, the legislative history provides little guidance on this issue. Prior to the enactment of the "restitution to the victim" provision in the Code of Criminal Procedure, the trial judge had broad authority to order a probationer to "make restitu-

tion or reparation in any sum the court shall determine." *See,* Tex.Code Crim.Proc.Ann. art. 781d (Vernon 1965). *See also,* Tex.Code Crim.Proc.Ann. art. 42.12, § 6(a)(8). In 1987, the Legislature enacted art. 42.12, § 6(e), the predecessor to the current "restitution to the victim" provision. *See,* Acts 1987, 70th Leg., ch. 939, § 4.[2] Thus, subsection (e), which specified paying "restitution to the victim" appears to be an attempt by the Legislature to restrict the trial judge's authority to order restitution. However, while the Legislature obviously intended to limit the scope of those who may receive restitution, the limitation of the provision, does not, in itself, define the breadth of the class of victims or what injuries were compensable. Furthermore, nowhere in the legislative record does the Legislature define the scope of the term victim for the purpose of restitution.[3] Consequently, the legislative history does not support the majority's conclusion that § 11(b) narrows the restitution statute

---

**2.** Section 6(e) of art. 42.12 was subsequently renumbered as § 11(b) of art. 42.12 by Acts of May 4, 1989, 71st Leg., R.S., ch. 785, § 4.17. Aside from renumbering the provision, the Legislature made no substantive changes.

**3.** In fact, the addition of "restitution to the victim" language to art. 42.12, § 6(e) appears to be a legislative afterthought. It is significant to note that prior to its enactment the House version of subsection (e), House Bill No. 83, did not contain "restitution to the victim" language but instead authorized the trial judge to require the probationer to make payments to the "crime stoppers" program.

In reaching the Senate, H.B. 83, which lacked "restitution to the victim" language, was referred to the Senate Committee on Criminal Jurisprudence. During the Committee on Criminal Jurisprudence hearing on H.B. 83, the committee members expressed two concerns over the "crime stoppers" provision: (1) a defendant would be overloaded with too many payments, and (2) a trial judge might order payments to selective favored organizations. The Committee on Criminal Jurisprudence decided to remove the "crime stoppers" provision by floor amendment in the Senate. Hearing on H.B. 83 Before Senate Committee on Criminal Justice, 70th Leg., R.S. (May 21, 1987 (Tape 1)).

On May 23, 1987, H.B. 83 was presented to the Senate. Sen. Farabee introduced a floor amendment which removed the "crime stoppers" language but substituted language authorizing the trial judge to order the probationer to pay "restitution to the victim." Sen. Farabee stated:

"This is a floor amendment that would state that a court may not order a probationer to make any payment as a term or condition of probation except for fines, court costs, *restitution to the victim* and other terms and conditions expressly authorized by the section.

... We do find that where people are being burdened down to the point that there may be indications they are going out to steal to try to make the terms. And in fact, one of the largest number of people in our institutions are there for technical violations."

Although Sen. Farabee did not define the scope of "victim" for the purposes of restitution, he acknowledged "restitution" would include counseling costs for child abuse victims. Senate Session, Second and Third Readings of H.B. No. 83, 70th Leg., R.S. (May 23, 1987 (Tape 1)). However, this statement is not probative as to whether the scope of "victim" may extend to those persons affected by conduct for which a defendant has not been charged and convicted.

Consequently, the legislative history does not provide guidance on whether complainants unnamed in the indictment, yet injured by a defendant's criminal conduct, are considered victims under § 11(b). The addition of the "restitution to the victim" language merely evinces a general legislative intent to narrow the class of persons entitled to restitution because the subsection modifies the broad grant of authority to order restitution under art. 42.12, § 8(a). However, judging from the Sen. Farabee's explanation while introducing the floor amendment, it is clear that restitution will include, *at a minimum,* all the complainant's expenses resulting from adjudicated criminal conduct.

to only the complainant named in the indictment.

### III.

The majority relies upon *Gordon v. State*, 707 S.W.2d 626 (Tex.Cr.App.1986), to hold a defendant's criminal liability must be adjudicated prior to ordering restitution. *See*, Majority Op. pg. 677. Gordon, a Harris County Deputy Sheriff, was charged with causing the death of a prisoner who died in Gordon's custody. Gordon was *acquitted* of causing the death but convicted of a lesser included offense. *Id.*, at 628. The trial judge probated Gordon's sentence and ordered Gordon, as a condition of probation, to pay restitution for the complainant's funeral expenses. *Id.* We held the trial judge was without authority to order restitution for funeral expenses because the jury found Gordon was *not* criminally responsible for the complainant's death. *Id.*, at 630.

The majority's reliance on *Gordon* is misplaced. The majority's interpretation of *Gordon* stems entirely from dicta. Majority Op. pg. 677, and n. 7. *Gordon* cited the concurring opinion in *Bradley v. State*, 478 S.W.2d 527 (Tex.Cr.App.1972), wherein Judge Roberts argued that a defendant placed on probation could *not* be ordered to pay restitution to a party other than the victim of the crime for which the defendant was convicted. *Gordon*, 707 S.W.2d at 629. However, the *Gordon* Court did *not* adopt Judge Roberts' rationale but rather emphasized that there had been an adjudication, namely an *acquittal* of causing the complainant's death.

Rather, *Gordon*'s holding is based upon less stringent due process considerations. In interpreting Tex.Code Crim.Proc.Ann. art. 42.12, § 6(a), the *Gordon* Court stated:

> Certainly whether to order restitution as a condition of probation is within the sound discretion of the trial court. But the dollar amount is a matter that the court 'shall determine' ... Due process considerations thus implicated require that there must be evidence in the record to show that the amount set by the court has a *factual basis*.

*Gordon*, 707 S.W.2d at 629 (citing *Cartwright v. State*, 605 S.W.2d 287, 289 (Tex.Cr.App.

1980)).[4] The *Gordon* Court held the order of restitution to be a denial of due process, "tantamount to penalizing [Gordon] for an offense for which he had been acquitted." *Gordon*, 707 S.W.2d at 630. In other words, Gordon's acquittal removed any *factual* basis upon which to predicate restitution for the funeral expenses. Accordingly, the trial judge was without authority to order Gordon to make restitution.

In *Gordon*, we relied upon *Cartwright v. State*, 605 S.W.2d 287 (Tex.Cr.App.1980). Cartwright was convicted of aggravated assault of a peace officer. The trial judge probated Cartwright's sentence, and, based on a presentence investigation report (PSI), ordered Cartwright to pay restitution in the amount of $36,000.00. We held that to support an order of restitution payments "there must be evidence in the record to show that the [restitution] amount set by the court has a *factual* basis." *Id.*, 605 S.W.2d at 289. Reviewing the record, we observed the only evidence supporting the trial judge's order of restitution was the PSI. Although the PSI mentioned the complainant's financial losses, the PSI did not otherwise support the restitution. *Id.*, at 288. We concluded the PSI did not establish a factual basis upon which to order restitution. *Id.*, at 289. *See also*, *Thompson v. State*, 557 S.W.2d 521, 525–526 (Tex.Cr.App.1977) (restitution order to complainant set aside because no evidentiary basis in record to support amount of restitution).

When read in conjunction, *Gordon* and *Cartwright* hold that a trial judge's authority to order restitution requires only: (1) that there be a *factual* basis in the record to conclude the defendant is liable for the criminal conduct, *Gordon*, 707 S.W.2d at 629–630, *and* (2) that there be a *factual* basis to determine the amount of the restitution, *Cartwright*, 605 S.W.2d at 289. *Compare*, *LaFleur v. State*, 848 S.W.2d 266, 270 (Tex. App.—Beaumont 1992), *and*, *Romine v. State*, 722 S.W.2d 494, 503 (Tex.App.—Houston [14th Dist.] 1986, PDR ref'd).

### IV.

In light of the foregoing, I believe art. 42.12, § 11(b) authorizes a trial judge to or-

---

**4.** At the time of Gordon's conviction, the Code of Criminal Procedure did not contain language limiting restitution payments to the victim of an offense. *See*, Part II, *supra*.

der restitution to the victims of offenses of which there is a factual basis in the record to conclude a defendant is criminally liable *and* for which there is a factual basis to determine the restitution amount. As we noted in *Gordon,* due process is violated by ordering a defendant to pay restitution to victims of an offense of which he is *acquitted. Id.,* 707 S.W.2d at 630. However, an acquittal is distinct from an unadjudicated offense which has a factual basis in the record. Due process requires no more than there be a factual basis in the record to conclude criminal liability before ordering restitution.[5] *See, Cartwright,* 605 S.W.2d at 287. *See also, Romine,* 722 S.W.2d at 503. Therefore, I would hold that where there is a factual basis in the record from which to conclude criminal liability for an unadjudicated offense, the trial judge has the authority to order restitution based on that offense to a victim so long as there is also a factual basis from which to determine the amount of the restitution.[6] *See, Gordon,* 707 S.W.2d at 630. *Compare, Harrison v. State,* 713 S.W.2d 760, 765 (Tex. App.—Houston [14th Dist.] 1986, PDR ref'd). Because the majority does not so hold, I respectfully dissent.

MILLER, J., joins this opinion.

---

5. Requiring a factual basis in the record of a defendant's criminal culpability is consistent with our case-law permitting the consideration of unadjudicated offenses at punishment in other contexts. *See, Kemp v. State,* 846 S.W.2d 289, 307 (Tex.Cr.App.1992), *and, Smith v. State,* 676 S.W.2d 379, 390 (Tex.Cr.App.1984) evidence of unadjudicated offenses is admissible during punishment phase of capital murder trial).

Moreover, in the last legislative session, the Legislature amended Tex.Code Crim.Proc.Ann. art. 37.07, § 3(a), to allow the admission of unadjudicated extraneous offenses during punishment phase of trial for non-capital offenses. *See,* Acts 1993, 73rd Leg., ch. 900, § 5.05, eff. Sept. 1, 1993. Notably, due process is not violated by the admission of unadjudicated offenses for the purposes of punishment because any unadjudicated offense must be proven beyond a reasonable doubt prior to its admission. *See,* art. 37.07, § 3(a). Further, the Legislature has provided

that on timely request by a defendant, notice that unadjudicated offenses will be used to increase punishment must include "the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act." Art. 37.07, § 3(g). *See also,* Tex.R.Crim.Evid. 404(b).

Consequently, to prevent surprise and prepare an adequate defense, the apt practitioner will request notice of a defendant's unadjudicated extraneous offenses pursuant to Tex.R.Crim.Evid. 404(b). *See, Espinosa v. State,* 853 S.W.2d 36, 39 (Tex.Cr.App.1993) (Baird, J., concurring).

6. As side note, however, I would not hold the trial judge's authority to order restitution under § 11(b) in any way precludes the State and a defendant from settling on an amount of restitution payments through plea bargaining.