

# NUMBER 13-11-00580-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**ETHEL MAY KENNEDY JONES,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

### On appeal from the 329th District Court
### of Wharton County, Texas.

## MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Vela**
**Memorandum Opinion by Justice Rose Vela**

A jury convicted appellant, Ethel May Kennedy Jones, of the second-degree felony offense of misappropriation of fiduciary property. *See* TEX. PENAL CODE ANN. § 32.45(b) (West 2011). The trial court assessed her punishment at confinement for eight years, suspended the sentence, placed her on community supervision for ten years, and ordered her to pay $87,000 in restitution. By five issues, appellant asserts: (1) the

evidence is legally insufficient to prove she was a fiduciary; (2) the trial court erred in denying her proposed jury instruction on parole evidence and trusts; (3) the trial court abused its discretion in awarding $87,000 in restitution; and (4) the trial court abused its discretion in ordering her to pay the victim's estate restitution in the event the victim died after the sentencing. We affirm.

## I. FACTUAL BACKGROUND

Edna Talafuse, who is eighty-five years old, began experiencing health problems and became concerned she would need someone to write checks for her. In 2004, she "put" appellant, who is her daughter-in-law, on her checking account. When the prosecutor asked Edna, "[D]id you talk to her [appellant] about . . . putting her on the checking account?", she said, "[S]he just understood that she was to pay my bills." When the prosecutor asked her, "Did you tell her that?", she said, "Yes" and testified appellant said "she understood." Edna explained appellant "was to pay my electric bill, my telephone bill, all my household expenses; and I authorized a thousand dollars a month for food for her house and my house."

In 2009, appellant started writing checks on Edna's checking account. Edna testified appellant "was still just going to pay my bills, pay my household bills, and write the checks that Floyd[1] and I needed writing." While on direct-examination, the prosecutor showed Edna numerous checks payable from her checking account. All of these checks were written by appellant during 2009 and 2010. Edna testified she did not give appellant permission to write these checks, which totaled over $100,000. When the prosecutor asked Edna, "Did you ever give permission for Ethel [appellant] to take the

---

[1] Edna Talafuse's husband's name is Floyd Talafuse.

2

money from your checking account and put it anywhere else?", she said, "No." Referring to the checks that appellant wrote on Edna's checking account in 2009 and 2010, the prosecutor asked Edna, "[Y]ou don't know where that money was spent because it wasn't spent on your care, correct?" In reply, she said, "No. They were not spent on my care."

On cross-examination, defense counsel asked Edna about the time she placed appellant on the checking account. When defense counsel asked her, "You understood that that was a contract that you were signing at the bank?", she said, "Well, no, I really didn't realize it was a contract. All I thought I was doing was putting her on. If I could not write checks that she could. . . . And pay my bills." Later, while questioning Edna about her health problems, defense counsel asked, "And you were having increasing confusion at the time; is that correct?", she said, "Right. But I never was so confused that I gave permission for these checks to be written." She stated, "All I'm telling you is I did not authorize these checks to be written." When defense counsel asked her, "Why are you saying that you did not authorize these checks at the time they were signed?", she said, "No, I did not authorize these checks. Never." She stated that "I had a contract for her [appellant] to pay my bills."

Cheryl Roach, the vice-president and branch manager of New First National Bank in Wharton, Texas, identified State's exhibit 1[2] as a signature-card contract, executed on June 21, 2004, between Floyd Talafuse, Edna Talafuse, and appellant. Roach explained that State's exhibit 1 is a joint checking account between Floyd, Edna, and appellant. She stated that before the signature card was executed, the parties on the account were Floyd and Edna Talafuse. After the signature card was executed,

---

[2] The trial court admitted State's exhibit 1 into evidence.

appellant was added to the account. When the prosecutor asked Roach, "[W]as an agreement made in your presence about the terms under which the defendant would be added to the account?", she said, "Yes, it was." Next, when the prosecutor asked her, "And what were the terms of that agreement?", she said, "That Mrs. Jones [appellant] was going to be added to the checking account in order to help pay bills and household bills and medical bills for Edna Talafuse and Floyd Talafuse." Roach testified appellant "acknowledge[d]" her participation in that agreement. On cross-examination, Roach testified Edna told her she "was putting her [appellant] on the account for the purpose of paying her household bills."

The defense rested its case at guilt-innocence without calling any witnesses.

## II. DISCUSSION

### A. Sufficiency of the Evidence

In issue one, appellant contends the evidence is legally insufficient to prove she was a fiduciary.

#### 1. Standard of Review

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). In *Malik v. State*, the court of criminal appeals articulated the "standard for ascertaining what the 'essential elements of the crime' are; they are 'the elements of the offense as

4

defined by the hypothetically correct jury charge for the case.'" *Johnson*, 364 S.W.3d at 294 (quoting *Malik*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The hypothetically correct jury charge is one that at least 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240). The court of criminal appeals has "described the law 'as authorized by the indictment' to be 'the statutory elements of the offense . . . as modified by the charging instrument[.]'" *Id.* (quoting *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000)).

### 2. Applicable Law

To convict appellant of misapplication of fiduciary property, "[t]he State must prove beyond a reasonable doubt that the defendant intentionally, knowingly, or recklessly misapplied property that she held as fiduciary in a manner that involved substantial risk of loss to the owner of the property or to the person for whose benefit the property was held." *Bowen v. State*, 374 S.W.3d 427, 431 (Tex. Crim. App. 2012) (citing TEX. PENAL CODE ANN. § 32.45(b)).

Section 32.45(a)(1) defines a "fiduciary," in relevant part, as any person acting in a fiduciary capacity; the term "fiduciary capacity" is not defined. *See* TEX. PENAL CODE ANN. § 32.45(a)(1)(C) (West 2011). In interpreting the meaning of an undefined statutory term, we apply the plain and ordinary meaning of the words, reading them in context and construing them in accordance with the rules of grammar and common usage. *Gonzalez v. State*, 954 S.W.2d 98, 103 (Tex. App.—San Antonio 1997, no pet.); *see* TEX. GOV'T

5

CODE ANN. § 311.011(a) (West 2005). The plain and common meaning of the term "fiduciary" is "'holding, held, or founded in trust or confidence.'" *Gonzalez*, 954 S.W.2d at 103 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 845 (1981)). Thus, a fiduciary is a person who has a duty, created by his or her own understanding, to act primarily for another person's benefit in matters connected with such undertaking. *Id.* (citing BLACK'S LAW DICTIONARY 625 (6th ed. 1990)); *Talamantez v. State*, 790 S.W.2d 33, 35 (Tex. App.—San Antonio 1990, pet. ref'd) (stating that a "fiduciary is one in whom another has justifiably reposed confidence to act in a certain manner"). A person receives money in a fiduciary capacity "'when the business which he transacts, or the money or property which he handles, is not his or for his own benefit, but for the benefit of another person as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part.'" *Gonzalez*, 954 S.W.2d at 103 (quoting BLACK'S LAW DICTIONARY 625 (6th ed. 1990)). Within section 32.45 of the penal code, "'misapply' means to deal with property contrary to an agreement under which the fiduciary holds the property." TEX. PENAL CODE ANN. § 32.45(a)(2)(A) (West 2011). The agreement need only be an understanding or arrangement concerning a particular course of action; the agreement need not be written. *Bynum v. State*, 767 S.W.2d 769, 774-75 (Tex. Crim. App. 1989); *Gonzalez*, 954 S.W.2d at 104.

In the instant case, Edna Talafuse placed appellant on her checking account in case she needed someone to write checks for her. When the prosecutor asked Edna, "[D]id you talk to her [appellant] about . . . putting her on the checking account?", she said,

6

"[S]he just understood that she was to pay my bills." When asked, "Did you tell her [appellant] that?", she said, "Yes" and testified appellant said "she understood." Edna explained that appellant "was to pay my electric bill, my telephone bill, all my household expenses; and I authorized a thousand dollars a month for food for her house and my house."

Based upon the agreement between appellant and Edna, appellant was not authorized to write checks for her own use and benefit, except that Edna allotted her $1,000 per month to buy food for both Edna and herself. Thus, the evidence showed appellant was acting as a fiduciary when she wrote checks on Edna's checking account pursuant to an agreement that the money was to be used for Edna's benefit, i.e., to pay her bills, not for appellant's own benefit, except for $1,000 per month to buy food. Edna trusted appellant to perform in accordance with the agreement, and appellant was aware of the trust Edna reposed to her. Therefore, appellant was required to act in a fiduciary capacity with respect to Edna's checking account. The evidence showing that appellant dealt with Edna's money contrary to their agreement, and thus misapplied the money, consisted of the following: appellant wrote numerous checks from 2009 to 2010 which Edna did not give her permission to write and which did not benefit Edna, except for the $1,000 per month for food. The jury was entitled to weigh and assess the credibililty of all the evidence and to draw reasonable inferences from the basic facts to the ultimate facts. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). There is legally sufficient evidence that appellant dealt with Edna's money in a fiduciary capacity and dealt with the money in a manner contrary to her agreement with Edna, failing to write

7

checks only for Edna's bills and using the money for her own benefit, except for the $1,000 per month for food, thereby violating section 32.45(b) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 32.45(b) (stating that "[a] person commits an offense [misapplication of fiduciary property] if he intentionally, knowingly, or recklessly misapplies property he holds as a fiduciary . . . in a manner that involves substantial risk of loss to the owner of the property or to a person for whose benefit the property is held").

We conclude that the jury could have reasonably inferred and found beyond a reasonable doubt that appellant, holding the money in Edna's checking account as a fiduciary, knowingly misapplied the money in a manner that involved substantial risk of loss. *See id.* Accordingly, we hold that the evidence is legally sufficient to support the conviction. Issue one is overruled.

**B. Charge Error**

In issue two, appellant contends the trial court erred in denying her requested instruction for the guilt-innocence charge concerning parole evidence and trusts. Defense counsel, in writing, requested the trial court to instruct the jury as follows:

> You are instructed that the parole evidence rule is a rule of substantive law which provides that, in the absence of fraud, accident, or mistake, extrinsic evidence is not admissible to vary, add to, or contradict the terms of a written contract that is facially complete and unambiguous. Evidence that violates the parole evidence rule is incompetent, without probative force, and cannot be given legal effect. The parole evidence rule does not bar evidence of a collateral agreement. A collateral agreement is one that would not ordinarily be expected to be embodied in or integrated with the written agreement and is not so connected with the principal transaction as to be part and parcel of it.

> You are instructed that a trust, in either real or personal property, is enforceable only if there is written evidence of the trust's terms bearing the signature of the person who creates the trust or contributes property to the

8

trustee of a trust, or the signature of that person's authorized agent. The trial court denied both of these instructions.

Texas Rule of Appellate Procedure 38.1(i) states the appellate "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Here, appellant's brief contains no citation to any authority that might support an argument that the trial court was required to instruct the jury concerning parole evidence and trusts. Therefore, we hold this point of error is inadequately briefed and presents nothing for review as this Court is under no obligation to make appellant's arguments for her. *Lucio v. State*, 351 S.W.3d 878, 396 (Tex. Crim. App. 2011); *see* TEX. R. APP. P. 38.1(i); *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008) (affirming that court of criminal appeals has no obligation "to construct and compose" a party's "issues, facts, and arguments with appropriate citations to authorities and to the record") (internal quotes omitted)); *Cardenas v. State*, 30 S.W.3d 384, 393–94 (Tex. Crim. App. 2000) (deciding in a capital case that the defendant's points complaining of the lack of a jury instruction on the voluntariness of the defendant's statements to the police, were inadequately briefed "by neglecting to present argument and authorities" in support of them). Issue two is overruled.

## C. Assessment of Restitution

In issue three, appellant contends the trial court abused its discretion in awarding $87,000 in restitution, because the evidence does not support that amount.

In *Cabla v. State*, the court of criminal appeals stated that "[r]estitution was intended to 'adequately compensate the victim of the offense' in the course of punishing

9

the criminal offender." 6 S.W.3d 543, 545 (Tex. Crim. App. 1999) (quoting TEX. CODE CRIM. PROC. ANN. art. 42.12 § 9(a)). A sentencing court may order a defendant to make restitution to any victim of the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 42.037(a) (West Supp. 2011). An appellate court reviews challenges to restitution orders under an abuse of discretion standard. *See Cartwright v. State*, 605 S.W.2d 287, 289 (Tex. Crim. App. 1980); *see also Drilling v. State*, 134 S.W.3d 468, 469 (Tex. App.—Waco 2004, no pet.). A trial court abuses its discretion when it acts without reference to any guiding rules or principles or acts arbitrarily or unreasonably, or when its decision is so clearly wrong that it lies outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1991) (op. on reh'g). When there is no evidence to support the amount of restitution ordered paid to the victim, the trial court abuses its discretion by including the amount in its restitution order. *See Gonzalez*, 954 S.W.2d at 104–05.

"[T]he amount of a restitution order is limited to only the losses or expenses that the victim or victims proved they suffered as a result of the offense for which the defendant was convicted." *Cabla*, 6 S.W.3d at 546. "An abuse of discretion by the trial court in setting the amount of restitution will implicate due-process considerations." *Campbell v. State*, 5 S.W.3d 693, 696 (Tex. Crim. App. 1999). Due process places four limitations on the restitution a trial court may order. First, "[t]he amount of restitution must be just, and it must have a factual basis within the loss of the victim." *Id.* Second, "[a] trial court may not order restitution for an offense for which the defendant is not criminally responsible." *Id.* at 697 (citing *Gordon v. State*, 707 S.W.2d 626, 629-30 (Tex.

10

Crim. App. 1986)). Third, "a trial court may not order restitution to any but the victim or victims of the offense with which the offender is charged." *Id.* (citing *Martin v. State*, 874 S.W.2d 674, 679–80 (Tex. Crim. App. 1994)). Fourth, a trial court may not, "without the agreement of the defendant, order restitution to other victims unless their losses have been adjudicated." *Id.* (citing *Ex parte Lewis*, 892 S.W.2d 4, 6 (Tex. Crim. App. 1994) (footnotes omitted)).

The standard of proof for determining restitution is a preponderance of evidence. TEX. CODE CRIM. PROC. ANN. art. 42.037(k). The burden of proving the amount of loss sustained by the victim is on the prosecution. *Id.* The restitution ordered must be "just" and must be supported by sufficient factual evidence in the record. *Cartwright*, 605 S.W.2d at 289.

Here, Edna testified that with respect to the checks appellant wrote on her (Edna's) checking account from February 2009 through September 2010 (a period of twenty months), she did not give permission to appellant to write these checks. The amount of these checks totaled approximately $109,650. During that time period, Edna did allow appellant to write checks in the amount of $1,000 per month ($20,000) for the purchase of groceries for Edna's household and for appellant's household. Thus, for the period of February 2009 through September 2010, appellant did not have permission to write checks on Edna's checking account for the total amount of $89,650 ($109,650 - $20,000). The trial court awarded restitution in the amount of $87,000. Thus, the amount of the restitution is just and has a factual basis in the evidence. Furthermore, the trial court did not: (1) order restitution for an offense for which appellant was not criminally

11

responsible; (2) order restitution to any person except the victim of the offense with which appellant was charged; and (3) order restitution to other victims. Thus, the trial court did not abuse its discretion in setting the amount of restitution at $87,000. We hold the evidence is legally sufficient to support the award of restitution. Issue three is overruled.

## D. Ability To Pay The Restituion Awarded

In issue four, appellant contends the trial court abused its discretion in ordering her to pay $87,000 in restitution because the evidence is insufficient to show she can pay that amount. At sentencing, the trial court ordered restitution in the amount of $87,000. However, appellant never objected when the trial court ordered her to pay the amount of restitution. "If a defendant wishes to complain about the appropriateness of (as opposed to the factual basis for) a trial court's restitution order, he must do so in the trial court, and he must do so explicitly."[3] *Idowu v. State*, 73 S.W.3d 918, 921 (Tex. Crim. App. 2002) (footnotes omitted). Appellant never objected that she did not have the ability to pay the amount of restitution. Accordingly, we conclude appellant has failed to preserve error on her complaint. *See* TEX. R. APP. P. 33.1; *Idowu*, 73 S.W.3d at 923. We overrule issue four.

## E. Payment Of Restitution To Victim's Estate

In issue five, appellant contends the trial court abused its discretion in ordering her to pay the restitution to the complainant's estate in the event the complainant died after the sentencing. After hearing the punishment evidence, the trial court sentenced appellant and ordered her to pay $87,000 in restitution. After the trial court made these

---

[3] A complaint that there is no factual basis in the record to support the restitution order is a challenge to the sufficiency of the evidence supporting the order, which can be raised for the first time on appeal. *See Mayer v. State*, 309 S.W.3d 552, 554–55 (Tex. Crim. App. 2010).

pronouncements, the prosecutor asked the court, "Can you also put on the record that if the victim dies, that she [appellant] will be required to pay the estate of the victim?" To this, the court stated, "The restitution applies no matter what happens to the victim. This restitution is to the victim and the victim's estate. Anything else?" Both the prosecutor and defense counsel replied in the negative. The record reflects that both appellant and her defense counsel were present when the trial court stated that, "this restitution is to the victim and the victim's estate." However, no objection was made to this pronouncement.

As a prerequisite to preserving a complaint on appeal, a party must have made a timely and specific objection to the trial court. *Grant v. State*, 345 S.W.3d 509, 512 (Tex. App.—Waco 2011, pet. ref'd) (citing TEX. R. APP. P. 33.1(a)(1)(A)). In the instant case, no objection was made to the trial court regarding the pronouncement that "[t]his restitution is to the victim and the victim's estate." Therefore, error, if any, is not preserved for appellate review. *See id.* Issue five is overruled.

### III. CONCLUSION

The judgment of the trial court is affirmed.

ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
20th day of December, 2012.

13