# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00119-CR

**Michelle Ochoa, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR2001-253, HONORABLE GARY L. STEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Michelle Ochoa was convicted by a jury of theft of funds from her employer bank. *See* Tex. Pen. Code Ann. ' 31.03(a) (West 2003). In two points of error, appellant contends that the trial court erred in (i) denying her motion for a directed verdict of acquittal and (ii) improperly ordering restitution. For the reasons that follow, we overrule appellant=s points of error and affirm the conviction.

## BACKGROUND

Norwest Bank employed appellant as a commercial bank teller at its Walnut Branch in New Braunfels, beginning in March 1997. Appellant=s duties included receiving commercial deposits at the bank=s drive-through facility. From April through August 1999, the bank discovered four separate losses of money, totaling $45,294.60. Appellant was subsequently charged and convicted of theft of property with a

value of $20,000 or more but less than $100,000. The court assessed punishment at 10 years= imprisonment, but suspended the imposition of sentence, placed her on ten years= community supervision, which included ninety days in county jail, and ordered that she make restitution in the amount of $43,000.

## ANALYSIS

In her first point of error, appellant contends that the trial court erred in denying her motion for a directed verdict of acquittal. In support of this contention, she argues that the evidence was legally and factually insufficient to show she appropriated United States currency. She contends that she was merely present at the scene of the crime. We disagree.

We treat a point of error complaining about a trial court=s failure to grant a motion for directed verdict as a challenge to the legal sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); *Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993). Because appellant raises the issue of factual sufficiency in the same point, in the interest of justice, we will address both legal and factual sufficiency of the evidence.

The standard for reviewing the legal sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the jury=s verdict, any rational trier of fact could have found beyond a reasonable doubt all the essential elements of the offense charged. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State,* 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *Lane v. State*, 933 S.W.2d 504, 507 (Tex. Crim. App. 1996). All the evidence that the jury was permitted to consider properly or improperly must be taken into account in determining the legal sufficiency of the evidence. *Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim.

2

App. 1993).  On appeal, we do not reevaluate the credibility of the witnesses or realign, disregard, or weigh the evidence.  *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992).  Every fact need not point directly and independently to the defendant=s guilt.  *Vanderbilt v. State*, 629 S.W.2d 709, 716 (Tex. Crim. App. 1981).  A conclusion of guilt can rest on the combined and cumulative force of all incriminating circumstances.  *Connor v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); *Vanderbilt*, 629 S.W.2d at 716.  The standard of review is the same for both direct and circumstantial evidence cases.  *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999); *Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992).  Circumstantial evidence, by itself, may be enough to support the jury=s verdict.  *Kutzner*, 994 S.W.2d at 184.

To determine factual sufficiency, we view the evidence in a neutral light and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.  *Johnson*, 23 S.W.3d at 7.  We must review the evidence weighed by the jury tending to prove the existence of the elemental fact in dispute and compare it to the evidence tending to disprove that fact.  *Id*. The appellate court may find either that the State=s proof of guilt was so obviously weak as to undermine confidence in the jury=s determination or that the finding of guilt  was against the great weight and preponderance of the evidence.  *Id*. at 11.  When the defendant proffers contrary evidence, we consider whether the proof of guilt, although adequate if taken alone, is greatly outweighed by the defendant=s evidence.  *Id*. We may disagree with the jury=s decision, even if probative evidence exists that supports the verdict.  *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).  However, a factual sufficiency review must be appropriately deferential to avoid substituting our judgment for that of the jury.  *Id*. at 648.

We are not free to reweigh the evidence, but must exercise our jurisdiction only to prevent a manifestly unjust result. *Id*.

Theft occurs when a person unlawfully appropriates property with the intent to deprive the owner of it.[1] Circumstantial evidence is generally relied upon to prove intent. *See Dillon v. State*, 574 S.W.2d 92, 95 (Tex. Crim. App. 1978). The trier of fact may infer intent from the act, words, and conduct of the accused. *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982).

The evidence at trial centered on three Aoutages@ of cash from the bank=s electronic dispensing unit (AEDU@) machine, an internal bank machine similar to an ATM machine, in April, July, and August 1999, and the loss of a customer=s deposit bag on August 20, 1999.

On July 1, 1999, Barbara Garza, the teller supervisor, determined that $3000 was missing from the EDU machine. Teller Melinda Cruf testified that she signed onto the machine with her password and failed to sign off. While she was signed onto the machine, $3000 was removed from the machine. The machine tape indicated that appellant had signed on and off the machine with her password just before Cruf signed on. A videotape showed that Cruf was in another part of the bank at the time $3000 was removed from the machine and could not have been the person who removed the money. At the time of the theft, Cruf was with a supervisor getting an approval for a transaction. Shortly after the theft occurred, Garza observed appellant at her car in the parking lot. She observed appellant because she thought it unusual for a

_____

[1] The penal code defines Aappropriate@ to mean Ato acquire or otherwise exercise control over property other than real property.@ Tex. Pen. Code Ann. ' 31.01(4)(B) (West 2003).

teller to leave her position, particularly just before she was scheduled to take her lunch break: AShe had the driver=s door open and she was leaning inside. And I don=t know if she was taking something out of the glove compartment or putting something in.@ The evidence showed that appellant made a $2000 cash deposit in a bank account in another bank under her maiden name on July 2.

An employee of McDonald=s, Jacqueline Hungerford, testified that in August 1999 she would drop off deposits at the bank once or twice a day. On August 20, she dropped off the business=s deposits at the bank=s drive-through facility. When the money for one bag containing only cash in the amount of $2294.60 was not credited to McDonald=s account and a deposit slip was missing on Monday, August 23, she reported the incident to the bank. Appellant later called Hungerford at home, admitting to taking the bag from her but not Aworking@ the bag because she Ahad to leave.@ She denied stealing the money and asked Hungerford if she knew a good lawyer in New Braunfels. Hungerford testified that the call was unusual because she had only known appellant through her relationship with the bank and appellant had never before called her at home.

Other employees also testified about the McDonald=s missing money bag. Teller Chrissy Hernandez testified that she worked the Adrive-through@ with appellant on August 20. Although appellant was generally responsible for the commercial deposits, when she was busy, others would help. Hernandez testified that she Aworked@ or counted two McDonald=s deposit bags on the day in question and that appellant had not logged in or accounted for the bags with her initials in accordance with bank procedure.

Jill Curtis, the branch manager, testified that appellant initially denied that she took the McDonald=s bags from the customer, but later said that she recalled receiving the bags from the customer

5

but left them on the counter for others to Awork.@ She did not make an entry of the bags onto the log sheet. Because of concerns about appellant, she was transferred to a smaller branch to receive closer supervision. Curtis testified that later in the week appellant returned to the Walnut Branch bank. Curtis noticed a bulge around appellant=s waistline Alike a big Ziplock bag kind of wadded up, the size of a folded money bag.@ Appellant offered to look in the basement in the tellers= trash bags Ato go see if she could find the plastic sack that McDonald=s had dropped off to see if it was, in fact, worked.@ Because Curtis was suspicious of appellant, she asked the teller supervisor, Barbara Garza, to accompany appellant to the basement. In the meantime, before Garza could accompany her, appellant went down to the basement alone. Garza testified that she encountered appellant in the basement going through the teller trash bags. Within approximately five minutes, appellant said that she had found the missing bag. When she returned from the basement, Curtis did not observe a bulge on appellant. Appellant was terminated by the bank for failure to follow teller procedures, specifically, to log in the bags, which was a direct violation of bank policy.

Curtis also testified that she was present during the investigation of the four episodes of missing money in the amounts of $25,000, $3000, $15,000, and $2,294.60, and that appellant was the only employee present with access to the EDU machine at the time of all of the thefts. The State presented circumstantial evidence showing appellant=s control over the EDU machine at the time of the other thefts. Evidence of appellant=s bank account at Norwest showed that she made deposits substantially in excess of her family=s earnings. When the bank first commenced its investigation of appellant, she declined to give the investigator permission to get bank and credit records from her other banks. The evidence at trial revealed

6

that, from April through July 1999, appellant made substantial cash deposits exceeding her income into an account at another bank under her maiden name.

We conclude that a rational jury could find, beyond a reasonable doubt, that appellant unlawfully appropriated the money with the requisite intent. The evidence is legally sufficient to support the jury=s verdict that appellant committed theft in an amount exceeding $20,000 and under $100,000.

In evaluating the evidence to determine if the proof of guilt is so obviously weak as to undermine confidence in the jury=s determination or that the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof, *see Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000), we take a neutral view of all the evidence. When a jury=s verdict depends primarily on its evaluation of the witnesses=demeanor and credibility as it does here, it deserves due deference. *Johnson*, 23 S.W.3d at 8-9.

Appellant testified in her own defense. Appellant denied that she stole any money from the bank and testified that the accusations were largely the result of animus by other employees, that the losses were due to poor bank procedures and thefts by other employees, and that her mother gave her cash gifts that accounted for the many cash deposits. Although her mother testified at the punishment stage, she did not testify at the guilt-innocence phase. Her mother=s testimony, in any event, did not account for the large sums of deposits made in appellant=s bank accounts that exceeded her family income.

Appellant argues that the evidence is insufficient because she did not have exclusive custody and control over the missing money and that other employees shared access to the funds. Appellant also challenged the time element on the EDU machine because it was off an hour as a result of daylight savings

7

time. The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given their testimony. *See* Tex. Code Crim. Proc. Ann. art. 36.13 (West 1981); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Reconciliation of conflicts in the evidence is within the exclusive province of the jury. *Margraves*, 34 S.W.3d at 919. The jury may accept portions of a witness=s testimony and reject portions of the testimony. *Id.*; *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986).

After neutral consideration of all the evidence, and after giving proper deference to the jury=s verdict, we conclude that the evidence of appellant=s guilt is not so weak as to undermine confidence in the jury=s determination, nor is proof of guilt greatly outweighed by contrary proof. The evidence is factually sufficient to support the jury=s verdict. Appellant=s first point of error is overruled.

By her second point of error, appellant complains that the trial court=s restitution order requiring her to pay $43,000 to the bank is improper because the order is not supported by the evidence. Asserting that the identity of the bank was inadequate because it changed names during the period in question, that the State failed to establish that the bank would not be fully compensated for its loss, and that the State did not prove the loss at the punishment stage, appellant urges that the order is not supported by the evidence. We disagree.

The code of criminal procedure provides a trial court with substantial discretion to order a defendant to pay restitution to the victim as a condition of community supervision. Tex. Code Crim. Proc. Ann. art. 42.037 (West Supp. 2003). Accordingly, we review a restitution order under an abuse of discretion standard. *Cartwright v. State*, 605 S.W.2d 287, 288-89 (Tex. Crim. App. 1980). The court

8

abuses its discretion when it acts in an arbitrary or unreasonable manner. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). The trial court=s discretion is guided by article 42.037(c), which specifies the factors a trial court may consider in ordering restitution:

    (1)   the amount of the loss sustained by any victim as a result of the offense;

    (2)   the financial resources of the defendant;

    (3)   the financial needs and earning ability of the defendant and the defendant=s dependents; and

    (4)   other factors the court deems appropriate.

Tex. Code Crim. Proc. Ann. art 42.037(c). In addition to these statutory guidelines, there are three recognized limits on the trial court=s ability to order restitution: (i) the amount of restitution must be just and supported by a factual basis in the record; (ii) restitution is limited to the offense for which the defendant is criminally responsible; and (iii) restitution is proper only for the victim or victims of the crime for which the defendant has been charged, convicted, and sentenced. *Campbell v. State*, 5 S.W.3d 693, 696-97 (Tex. Crim. App. 1999); *Lemos v. State*, 27 S.W.3d 42, 45 (Tex. App.CSan Antonio 2000, pet. ref=d).

      Norwest Bank is the victim designated in the indictment. Testimony at trial established that the ownership of the bank designated in the indictment changed during the relevant time period. The State established the identity of the victim bank as Norwest Bank and that its new owner was Wells Fargo Bank. Due process requires sufficient evidence in the record to determine whether the amount ordered by the trial court has a factual basis in the record. *Martin v. State*, 874 S.W.2d 674, 682 (Tex. Crim. App. 1994). The evidence in the record shows the value of the loss to the bank as a consequence of the four theft

episodes to be in excess of $45,000. The trial court ordered the appellant to make restitution to the bank in the amount of $43,000. The State is not required to re-present the evidence it adduced at the guilt-innocence stage; thus, the trial court=s order is supported by the evidence. The trial court did not abuse its discretion in entering the restitution order. Appellant=s second point of error is overruled.

## CONCLUSION

Having overruled appellant=s two points of error, we affirm the trial court=s judgment.

_____

Jan P. Patterson, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed:   April 10, 2003

Do Not Publish