TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00119-CR






Michelle Ochoa, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT

NO. CR2001-253, HONORABLE GARY L. STEEL, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



 Appellant Michelle Ochoa was convicted by a jury of theft of funds from her
employer bank. See Tex. Pen. Code Ann. § 31.03(a) (West 2003). In two points of error, appellant
contends that the trial court erred in (i) denying her motion for a directed verdict of acquittal and (ii)
improperly ordering restitution. For the reasons that follow, we overrule appellant's points of error
and affirm the conviction.


BACKGROUND

 Norwest Bank employed appellant as a commercial bank teller at its Walnut Branch
in New Braunfels, beginning in March 1997. Appellant's duties included receiving commercial
deposits at the bank's drive-through facility. From April through August 1999, the bank discovered
four separate losses of money, totaling $45,294.60. Appellant was subsequently charged and
convicted of theft of property with a value of $20,000 or more but less than $100,000. The court
assessed punishment at 10 years' imprisonment, but suspended the imposition of sentence, placed
her on ten years' community supervision, which included ninety days in county jail, and ordered that
she make restitution in the amount of $43,000.


ANALYSIS

 In her first point of error, appellant contends that the trial court erred in denying her
motion for a directed verdict of acquittal. In support of this contention, she argues that the evidence
was legally and factually insufficient to show she appropriated United States currency. She contends
that she was merely present at the scene of the crime. We disagree.

 We treat a point of error complaining about a trial court's failure to grant a motion
for directed verdict as a challenge to the legal sufficiency of the evidence. Williams v. State, 937
S.W.2d 479, 482 (Tex. Crim. App. 1996); Cook v. State, 858 S.W.2d 467, 470 (Tex. Crim. App.
1993). Because appellant raises the issue of factual sufficiency in the same point, in the interest of
justice, we will address both legal and factual sufficiency of the evidence.

 The standard for reviewing the legal sufficiency of the evidence is whether, viewing
the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have
found beyond a reasonable doubt all the essential elements of the offense charged. Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Lane
v. State, 933 S.W.2d 504, 507 (Tex. Crim. App. 1996). All the evidence that the jury was permitted
to consider properly or improperly must be taken into account in determining the legal sufficiency
of the evidence. Garcia v. State, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994); Johnson v. State,
871 S.W.2d 183, 186 (Tex. Crim. App. 1993). On appeal, we do not reevaluate the credibility of the
witnesses or realign, disregard, or weigh the evidence. Adelman v. State, 828 S.W.2d 418, 421 (Tex.
Crim. App. 1992). Every fact need not point directly and independently to the defendant's guilt. 
Vanderbilt v. State, 629 S.W.2d 709, 716 (Tex. Crim. App. 1981). A conclusion of guilt can rest
on the combined and cumulative force of all incriminating circumstances. Connor v. State, 67
S.W.3d 192, 197 (Tex. Crim. App. 2001); Vanderbilt, 629 S.W.2d at 716. The standard of review
is the same for both direct and circumstantial evidence cases. Kutzner v. State, 994 S.W.2d 180, 184
(Tex. Crim. App. 1999); Green v. State, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992). 
Circumstantial evidence, by itself, may be enough to support the jury's verdict. Kutzner, 994 S.W.2d
at 184.

 To determine factual sufficiency, we view the evidence in a neutral light and set aside
the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust. Johnson, 23 S.W.3d at 7. We must review the evidence weighed by the jury tending to
prove the existence of the elemental fact in dispute and compare it to the evidence tending to
disprove that fact. Id. The appellate court may find either that the State's proof of guilt was so
obviously weak as to undermine confidence in the jury's determination or that the finding of guilt
was against the great weight and preponderance of the evidence. Id. at 11. When the defendant
proffers contrary evidence, we consider whether the proof of guilt, although adequate if taken alone,
is greatly outweighed by the defendant's evidence. Id. We may disagree with the jury's decision,
even if probative evidence exists that supports the verdict. Jones v. State, 944 S.W.2d 642, 647
(Tex. Crim. App. 1996). However, a factual sufficiency review must be appropriately deferential
to avoid substituting our judgment for that of the jury. Id. at 648. We are not free to reweigh the
evidence, but must exercise our jurisdiction only to prevent a manifestly unjust result. Id.

 Theft occurs when a person unlawfully appropriates property with the intent to
deprive the owner of it. (1) Circumstantial evidence is generally relied upon to prove intent. See Dillon
v. State, 574 S.W.2d 92, 95 (Tex. Crim. App. 1978). The trier of fact may infer intent from the act,
words, and conduct of the accused. Dues v. State, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982).

 The evidence at trial centered on three "outages" of cash from the bank's electronic
dispensing unit ("EDU") machine, an internal bank machine similar to an ATM machine, in April,
July, and August 1999, and the loss of a customer's deposit bag on August 20, 1999.

 On July 1, 1999, Barbara Garza, the teller supervisor, determined that $3000 was
missing from the EDU machine. Teller Melinda Cruf testified that she signed onto the machine with
her password and failed to sign off. While she was signed onto the machine, $3000 was removed
from the machine. The machine tape indicated that appellant had signed on and off the machine with
her password just before Cruf signed on. A videotape showed that Cruf was in another part of the
bank at the time $3000 was removed from the machine and could not have been the person who
removed the money. At the time of the theft, Cruf was with a supervisor getting an approval for a
transaction. Shortly after the theft occurred, Garza observed appellant at her car in the parking lot. 
She observed appellant because she thought it unusual for a teller to leave her position, particularly
just before she was scheduled to take her lunch break: "She had the driver's door open and she was
leaning inside. And I don't know if she was taking something out of the glove compartment or
putting something in." The evidence showed that appellant made a $2000 cash deposit in a bank
account in another bank under her maiden name on July 2.

 An employee of McDonald's, Jacqueline Hungerford, testified that in August 1999
she would drop off deposits at the bank once or twice a day. On August 20, she dropped off the
business's deposits at the bank's drive-through facility. When the money for one bag containing
only cash in the amount of $2294.60 was not credited to McDonald's account and a deposit slip was
missing on Monday, August 23, she reported the incident to the bank. Appellant later called
Hungerford at home, admitting to taking the bag from her but not "working" the bag because she
"had to leave." She denied stealing the money and asked Hungerford if she knew a good lawyer in
New Braunfels. Hungerford testified that the call was unusual because she had only known appellant
through her relationship with the bank and appellant had never before called her at home.

 Other employees also testified about the McDonald's missing money bag. Teller
Chrissy Hernandez testified that she worked the "drive-through" with appellant on August 20. 
Although appellant was generally responsible for the commercial deposits, when she was busy,
others would help. Hernandez testified that she "worked" or counted two McDonald's deposit bags
on the day in question and that appellant had not logged in or accounted for the bags with her initials
in accordance with bank procedure.

 Jill Curtis, the branch manager, testified that appellant initially denied that she took
the McDonald's bags from the customer, but later said that she recalled receiving the bags from the
customer but left them on the counter for others to "work." She did not make an entry of the bags
onto the log sheet. Because of concerns about appellant, she was transferred to a smaller branch to
receive closer supervision. Curtis testified that later in the week appellant returned to the Walnut
Branch bank. Curtis noticed a bulge around appellant's waistline "like a big Ziplock bag kind of
wadded up, the size of a folded money bag." Appellant offered to look in the basement in the tellers'
trash bags "to go see if she could find the plastic sack that McDonald's had dropped off to see if it
was, in fact, worked." Because Curtis was suspicious of appellant, she asked the teller supervisor,
Barbara Garza, to accompany appellant to the basement. In the meantime, before Garza could
accompany her, appellant went down to the basement alone. Garza testified that she encountered
appellant in the basement going through the teller trash bags. Within approximately five minutes,
appellant said that she had found the missing bag. When she returned from the basement, Curtis did
not observe a bulge on appellant. Appellant was terminated by the bank for failure to follow teller
procedures, specifically, to log in the bags, which was a direct violation of bank policy.

 Curtis also testified that she was present during the investigation of the four episodes
of missing money in the amounts of $25,000, $3000, $15,000, and $2,294.60, and that appellant was
the only employee present with access to the EDU machine at the time of all of the thefts. The State
presented circumstantial evidence showing appellant's control over the EDU machine at the time of
the other thefts. Evidence of appellant's bank account at Norwest showed that she made deposits
substantially in excess of her family's earnings. When the bank first commenced its investigation
of appellant, she declined to give the investigator permission to get bank and credit records from her
other banks. The evidence at trial revealed that, from April through July 1999, appellant made
substantial cash deposits exceeding her income into an account at another bank under her maiden
name.

 We conclude that a rational jury could find, beyond a reasonable doubt, that appellant
unlawfully appropriated the money with the requisite intent. The evidence is legally sufficient to
support the jury's verdict that appellant committed theft in an amount exceeding $20,000 and under
$100,000.

 In evaluating the evidence to determine if the proof of guilt is so obviously weak as
to undermine confidence in the jury's determination or that the proof of guilt, although adequate if
taken alone, is greatly outweighed by contrary proof, see Johnson v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000), we take a neutral view of all the evidence. When a jury's verdict depends
primarily on its evaluation of the witnesses' demeanor and credibility as it does here, it deserves due
deference. Johnson, 23 S.W.3d at 8-9.

 Appellant testified in her own defense. Appellant denied that she stole any money
from the bank and testified that the accusations were largely the result of animus by other employees,
that the losses were due to poor bank procedures and thefts by other employees, and that her mother
gave her cash gifts that accounted for the many cash deposits. Although her mother testified at the
punishment stage, she did not testify at the guilt-innocence phase. Her mother's testimony, in any
event, did not account for the large sums of deposits made in appellant's bank accounts that
exceeded her family income.

 Appellant argues that the evidence is insufficient because she did not have exclusive
custody and control over the missing money and that other employees shared access to the funds. 
Appellant also challenged the time element on the EDU machine because it was off an hour as a
result of daylight savings time. The jury is the exclusive judge of the facts, the credibility of the
witnesses, and the weight to be given their testimony. See Tex. Code Crim. Proc. Ann. art. 36.13
(West 1981); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000); Sharp v. State, 707
S.W.2d 611, 614 (Tex. Crim. App. 1986). Reconciliation of conflicts in the evidence is within the
exclusive province of the jury. Margraves, 34 S.W.3d at 919. The jury may accept portions of a
witness's testimony and reject portions of the testimony. Id.; Losada v. State, 721 S.W.2d 305, 309
(Tex. Crim. App. 1986).

 After neutral consideration of all the evidence, and after giving proper deference to
the jury's verdict, we conclude that the evidence of appellant's guilt is not so weak as to undermine
confidence in the jury's determination, nor is proof of guilt greatly outweighed by contrary proof. 
The evidence is factually sufficient to support the jury's verdict. Appellant's first point of error is
overruled.

 By her second point of error, appellant complains that the trial court's restitution order
requiring her to pay $43,000 to the bank is improper because the order is not supported by the
evidence. Asserting that the identity of the bank was inadequate because it changed names during
the period in question, that the State failed to establish that the bank would not be fully compensated
for its loss, and that the State did not prove the loss at the punishment stage, appellant urges that the
order is not supported by the evidence. We disagree.

 The code of criminal procedure provides a trial court with substantial discretion to
order a defendant to pay restitution to the victim as a condition of community supervision. Tex.
Code Crim. Proc. Ann. art. 42.037 (West Supp. 2003). Accordingly, we review a restitution order
under an abuse of discretion standard. Cartwright v. State, 605 S.W.2d 287, 288-89 (Tex. Crim.
App. 1980). The court abuses its discretion when it acts in an arbitrary or unreasonable manner. 
Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). The trial court's discretion is
guided by article 42.037(c), which specifies the factors a trial court may consider in ordering
restitution:



 the amount of the loss sustained by any victim as a result of the offense;




 the financial resources of the defendant;

 the financial needs and earning ability of the defendant and the defendant's
dependents; and



(4) other factors the court deems appropriate.



Tex. Code Crim. Proc. Ann. art 42.037(c). In addition to these statutory guidelines, there are three
recognized limits on the trial court's ability to order restitution: (i) the amount of restitution must
be just and supported by a factual basis in the record; (ii) restitution is limited to the offense for
which the defendant is criminally responsible; and (iii) restitution is proper only for the victim or
victims of the crime for which the defendant has been charged, convicted, and sentenced. Campbell
v. State, 5 S.W.3d 693, 696-97 (Tex. Crim. App. 1999); Lemos v. State, 27 S.W.3d 42, 45 (Tex.
App.--San Antonio 2000, pet. ref'd).

 Norwest Bank is the victim designated in the indictment. Testimony at trial
established that the ownership of the bank designated in the indictment changed during the relevant
time period. The State established the identity of the victim bank as Norwest Bank and that its new
owner was Wells Fargo Bank. Due process requires sufficient evidence in the record to determine
whether the amount ordered by the trial court has a factual basis in the record. Martin v. State, 874
S.W.2d 674, 682 (Tex. Crim. App. 1994). The evidence in the record shows the value of the loss
to the bank as a consequence of the four theft episodes to be in excess of $45,000. The trial court
ordered the appellant to make restitution to the bank in the amount of $43,000. The State is not
required to re-present the evidence it adduced at the guilt-innocence stage; thus, the trial court's
order is supported by the evidence. The trial court did not abuse its discretion in entering the
restitution order. Appellant's second point of error is overruled.


CONCLUSION

 Having overruled appellant's two points of error, we affirm the trial court's judgment.



 __________________________________________

 Jan P. Patterson, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed: April 10, 2003

Do Not Publish

1. The penal code defines "appropriate" to mean "to acquire or otherwise exercise control
over property other than real property." Tex. Pen. Code Ann. § 31.01(4)(B) (West 2003).